June, 1810.

STILES
v.
CURTIS.

---

BENJAMIN STILES, AND THE REST OF THE PROPRIETORS OF THE COMMON AND UNDIVIDED LAND IN THE ANCIENT TOWNSHIP OF WOODBURY, *against* DAVID CURTIS.

The proprietors of the ancienttownship of *Woodbury,* having, about

MOTION for a new trial.

This was an action of ejectment.

On the trial it appeared, that the demanded premises a century ago appropriated a tier of their common and undivided land for a public highway, by laying out the land adjoining thereto, and selling the same as being bounded on the highway; which tier was used as a public highway for nearly a century, but is not now needed for that purpose; held that such proprietors of common and undivided land could not maintain ejectment against the owner of the adjoining lands who had recently enclosed and taken exclusive possession of such highway.

*Quære,* whether the fee of a public highway is in the proprietors of the adjoining lands?

originally belonged to the ancient township of *Wood-bury*, as common and undivided land; and were part of a tier of land which had been, about one hundred years ago, appropriated by the proprietors for a public high-way, by laying out the common land adjoining on both sides thereto, and selling the same *as being bounded on the highway*. This tier of land had been used as a pub-lic highway for about one hundred years, but was not needed for that purpose any longer. The defendant owns the adjoining lands on both sides of the highway, and had enclosed it with those lands within two years, past, and continued in possession. Upon these facts the question was, whether the title to the demanded pre-mises was in the plaintiffs, the proprietors of the ancient township of *Woodbury?* The court directed the jury that these proprietors, by laying out the highway of which the premises are a part, had, in law, parted with all their right and interest therein, and had no title thereto; and that the defendant was, therefore, entitled to a verdict. The jury found accordingly; and the plaintiffs moved for a new trial, which was reserved for the consideration of the nine judges.

*Daggett* and *Gould* argued in support of the motion, and *N. B. Benedict* against it. The grounds taken by the counsel in argument, and the authorities cited, being fully considered by the judges in delivering their opi-nions, it is unnecessary to state them in this place.

J. C. SMITH, J. The declaration is in common form; containing the usual allegations of seisin and possession in the plaintiffs, and an ouster by the defendant. It ap-pears, however, in evidence, that the demanded premises are part of an *open, public highway*, long used and occu-pied as such; that it was dedicated to that use by the original proprietors of the ancient town of *Woodbury*,

"by laying out the common land on both sides, and sell-
ing the same as bounded on highway;" and that the de-
fendant has enclosed a portion of it next to his own farm.

Two questions arise:

First, admitting the plaintiffs are seised in fee of the
highway, can they maintain this action?

Secondly, have the plaintiffs a title?

1. *To gain possession* must be the object of the suit,
and for the purpose either of remaining upon the pre-
mises, or of removing the encroachment. Now, to the
former, it is very clear, no one has a right; and to ac-
complish the latter this is not the remedy.

The respective interests of the owner of the soil, and
of the public, in a highway are well understood. The
public, it is true, have but the easement, a right for all
people freely to pass and repass; but let it be observed,
this is a right the exercise of which most effectually de-
nies to any individual an exclusive possession. The de-
fendant, by enclosing a part of the highway, has, undoubt-
edly, erected a nuisance; but should the plaintiffs reco-
ver in the present action, and thus become possessed of
the enclosure, it would not be the less a nuisance. The
injury to the public would be the same; with this differ-
ence, however, that a judgment in favour of the plaintiffs
must have the effect to fix the seisin and possession in
them absolutely, and, of course, to legalize and perpetuate
the obstruction.

But it is asked, on the authority of *Goodtitle*, d. *Chester*,
v. *Alker and Elms*, 1 *Burr*. 133. "why possession may not
be recovered *subject to the easement?*" The answer is
already given. It is because this easement and that pos-
session are wholly incompatible. They cannot coexist.
The proposition is, indeed, a paradox, and involves as
great an absurdity as to issue an *habere facias posses-
sionem* of certain premises to *A.*, *subject to the possession
of B.* The court of *king's bench*, in the case just men-
tioned, I am sensible, did decide that ejectment would lie

for a highway, by the owner of the soil, *subject to the easement*. " Trespass will lie," say the court, " and why not ejectment?" Without being able to perceive that the conclusion follows at all from the premises, I would just remark, that the *English* ejectment is widely different from ours. There the judgment is operative against the defendant *pro hac vice* only. He may immediately afterwards draw the same title or right of possession again into controversy; and under that form of action nothing can prevent an endless course of litigation but the interposition of a court of equity. Possession follows the recovery ; otherwise it is in its nature a mere action of trespass. This strong analogy, and the inefficacy of the judgment in settling definitively the rights of the parties, may have induced that decision. But even with this apology, and with all my veneration for the illustrious judge who delivered the opinion of the court in that case, I must be allowed not to acquiesce in the propriety of the determination. It was not only without precedent, but in opposition to what was declared by counsel to have been the opinion of Lord *Hardwicke* at *nisi prius*. It was, moreover, giving the plaintiff a remedy repugnant in itself, and ill adapted to the injury ; for unless he was to continue the nuisance, which no one will pretend, this, surely, was an indirect and awkward method of removing it ; especially when the common law had provided the more apposite and efficacious remedies of *assise*, *quod permittat prosternere*, and indictment. Neither was it necessary (and the observation applies equally to the present case) in order to prevent the defendant from acquiring a title by possession. The owner of the soil not having an exclusive right of possession during the continuance of the servitude or easement, cannot be affected by the statute of limitations. No other right or title of entry is within the statute, except that which is accompanied by a right of

June, 1810.

STILES
v.
CURTIS.

possession. This principle, if it needs confirmation, is fully recognised in *Doe*, d. *Cook*, v. *Danvers*, 7 *East*, 321.

In short, the law allows the owner of the soil such remedies as are adapted to the nature of his estate, and as are consistent with the claims of the public. He may maintain trespass for any injury to the ground, or to the trees standing upon it; and he, as well as the public, is entitled to specific redress for all obstructions and encroachments. The present action, not being calculated for either of these purposes, cannot, in my opinion, be sustained.

2. Although this objection may be sufficient to dispose of the case, it is proper, *secondly*, to take notice of the only point distinctly presented by the motion for a new trial, namely, whether the plaintiffs, representing the original proprietors of the ancient town of *Woodbury*, are to be presumed the lawful owners of the soil in question? I entirely concur with my brethren who tried the cause, in their direction to the jury, that no such presumption exists, but " that the proprietors, by the manner of laying out this highway, have, in law, parted with all right and interest therein."

It is a rule of the common law, that the fee of highways belongs to the owners of the adjoining ground. The following authorities, besides other common place writers, are full to this effect. *Br.* tit. *Nusans*, pl. 28. cites 8 *Hen.* VII. 5. Tit. *Chimin*, pl. 15. Tit. *Leet*, pl. 3. 1 *Roll.* 392. 4 *Vin.* 504. 515. *Wood's Inst.* 98. 2 *Wooddes.* 38. *in notis.*

In some of the books it is said, the right is " in the lord of the manor, or the adjoining proprietors;" in others, " in the lord of the leet, or the adjoining proprietors." The meaning is obvious. When the highway passes through a manor, the lord who owns the fee of the manor is, of course, the *adjoining* proprietor. The same may be said of the lord of the leet, who has the *seigniory in fee.*

Such is the explanation given by *Brooke*, who says *leet* is sometimes synonymous with *fee*, and that the phrase

cannot be supported on any other construction. It is even illustrated by the case of *Goodtitle, &c.* v. *Alker, &c.* so much relied upon by the plaintiffs' counsel in another part of the argument. There the lessor of the plaintiff was seised in fee of the manor of *Barton Regis*, and, consequently, of the highways within its limits. The defendant, a tenant of that manor, was held liable to the lord for encroachments. Indeed, all actions for injuries affecting the soil and freehold of highways, so far as reports of them have fallen under my observation, have been uniformly brought and sustained by the *adjoining proprietor*. This principle is so well settled, as also the rule that owners on opposite sides hold to the middle of the way, that in *Stevens* v. *Whistler*, 11 *East*, 51. it was readily and explicitly recognised by all the counsel as well as the court; although the case itself was decided on other grounds. The same general doctrine, that " whoever owns the adjoining soil owns the fee of the highway," is admitted without qualification by the supreme court of a neighbouring state. *Cortelyou* v. *Van Brundt*, 2 *Johns. Rep.* 363.

I do not know that the point has been directly decided in *Connecticut*. The case of *Litchfield* v. *Wilmot*, the only one which bears upon the question, it is confidently said, is not correctly reported. Certainly this point was not necessarily involved in that case. However, the aid of local authorities is not required to establish a plain principle of the common law. It is enough that there has been no decision impugning it by the court of *ultimate* jurisdiction. And it may be added that the act of *May*, 1799, (tit. 86. c. 2.) is in perfect consistency with the same principle.

The reason assigned for the rule in all the books is, " *the adjoining owners are presumed to have originally furnished the ground for the highway.*" From the rule, then, and the reason given, it evidently results, that in the transmission of the adjoining soil through successive

June, 1810.

STILES
v.
CURTIS.

proprietors, the fee of the highway also passes *as parcel of, and appurtenant thereto;* otherwise, it would be absurd to consider the *present* owners of an *ancient* highway proprietors in fee of the latter; a principle than which no one doctrine of the common law seems better established.

How, then, stands the present case? The proprietors of *Woodbury* were the *adjoining owners.* They dedicated a portion of their land to the public for a highway. They sold the land from which the road was thus taken to individuals in fee, and bounded them on this highway. That which is ordinarily supposed to rest on mer presumption is here, therefore, supported by direct evidence. I have no hesitation in saying the rule emphatically applies, and that all right and title to the soil and inheritance of the demanded premises accompanied the conveyance of the adjoining land.

Consequently, I am of opinion no new trial ought to be granted.

BALDWIN, J. I am also opposed to a new trial. I wish, however, that it may not be understood that I accord with my brother *Smith* in the opinion that the fee of such highways belongs to the owner of the adjoining land. All grants of land are subject to necessary and convenient highways for public use.

When the proprietors of towns have set apart certain portions of their territory for highways, they virtually contract with the public and the owner of adjoining land, that they shall so remain; and they relinquish, at least for so long a time as the public may need them, all their use and control of the lands thus sequestered. They are then taken under the care and management of the public, who are bound to see them duly repaired, and kept free from encroachment; and the public alone, in the way pointed out by the statute, can discontinue highways. The policy of our law has not left the power of control

6

June, 1810.

STILES
v.
CURTIS.

ling them, either with the owners of adjoining land, or with interested proprietors. Until the public have in a legal manner given up a highway, the proprietors, or whoever may own the fee, can have no right to the exclusive possession of it; and such is the only possession they can obtain by this action. A recovery subject to the easement is not demanded; and if it was, could not be maintained, because it would be useless, and altogether opposed to the system of our laws on the subject of highways. Without deciding the question, therefore, whether these proprietors, or the owners of the adjoining land, have right to the fee, so as to maintain this action, after a highway shall have been legally discontinued, I am of opinion they cannot now support their action.

BRAINERD, J. thought that a new trial ought not to be granted. Without deciding the abstract question, in whom is the fee of a highway? he was of opinion that the grant, under the peculiar circumstances of this case, had vested the fee in the proprietor of the adjoining lands.

EDMOND, J. was opposed to granting a new trial; but did not fully concur in the reasons offered by Judge *Smith.*

TRUMBULL, J. was of opinion that the original proprietors had given up their right to the premises, and could not maintain this action as long as the same remained a highway. He would not, therefore, advise a new trial.

SWIFT, J. As some incorrect opinions have been entertained respecting the rights of highways, I am glad this case has furnished the court an opportunity of promulgating the law on the subject.

June, 1810.

STILES
v.
CURTIS.

It is agreed that the public have not the fee, the free-hold, or right of soil in highways; but have only the right of passing and repassing it. This is called an *easement*, or incorporeal right. The question arising in this case is, in whom is the freehold or right of soil in highways ?

It appears to me incontestably evident, that by the common law, the proprietors of lands adjoining to highways own the freehold of the soil. This doctrine is distinctly laid down in 1 *Roll. Abr.* 392.; also in *Wood's Institutes*, where the law is very clearly expressed. "The freehold of highways and bridges is in him that hath the freehold of the soil, either the lord of the manor, as part of his waste; or the land owners on both sides of the way: for the law presumes that the way was at first taken out of the party that hath other lands adjoining to it." The same doctrine is recognised in 3 *Com. Dig.* 27. and 3 *Bac. Abr.* 54. where it is said "the freehold and all the profits, as trees, belong to the lord of the soil, or to the owners of the land, on both sides of the way."

This language is too explicit to admit of doubt or mis-construction. It plainly declares that the land owners on both sides the way have the freehold of the soil, which means the land owners at the present time. It cannot, by any possible construction, be understood of the original proprietors when the highway was laid out. If such had been the law, then the expression should have been, that the freehold of the way is in the land owner at the time it is laid out, and his heirs and assigns. But this would be language and meaning as different from the rule laid down as can be imagined.

The reason given for the rule is, that the law presumes that the way was at first taken out of the party that hath other lands adjoining. This is almost invariably the fact, especially in this country; the circumstance that the ancient proprietors of towns granted lands and re-served highways, can make no difference ; for it was lay-

June, 1810.

STILES
v.
CURTIS.

ing out the highway from the land of adjoining proprietors, and the conveyance of the land adjoining the highway, by the same act which constituted the highway, would as effectually transfer the right of soil in the highway, as if conveyed at a subsequent period. It is true, there may be supposable cases where the way is not taken from an adjoining proprietor; as where it comprehends the whole of a man's land; but such cases can rarely if ever occur, and will not be so numerous as to require a different rule. And it is so generally true, that the way is taken from land of adjoining proprietors, it will warrant the presumption that this is always the fact, for the purpose of establishing a uniform rule with regard to the right of soil in public ways.

It is true, it is nowhere said that the freehold of a way accompanies the adjoining land from possessor to possessor; but this is fairly implied, and must necessarily be understood from the expression that the freehold of the soil is in the land owners on both sides of the way; and it may be remarked, there is not a *dictum* in any common law authority, that the freehold of the way remained in the original proprietor after he had transferred the adjoining land; or that it would descend to his heirs, or that he could transfer it distinct from the adjoining land.

It has been said, that a grant limited by certain bounds conveys nothing beyond the bounds; but this is not a correct position. A grant of land, however bounded, conveys every thing appurtenant to it. Suppose a man has a farm with a right of way over another's land, appurtenant to it; a conveyance of such farm, described by metes and bounds, will convey the right of way appurtenant to it. Suppose a man conveys land bounded on a river not navigable, the right of soil to the centre of the river is conveyed as an appurtenant. So in the present case, highways are to be considered as appurtenant to the adjoining land, and pass in a conveyance of

it; for in all cases, it would be convenient and reasonable, and, in many cases, useful and necessary, for a complete enjoyment of the adjoining land.

But the doctrine contended for by the plaintiff would be productive of the greatest inconvenience. If the adjoining proprietors have not the right of soil in the way, they can have no right but that of passing and repassing it in common with the other citizens of the state, and can maintain no action for any injury done to it, or to remove any encroachment or encumbrance, unless they are affected by it as a common nuisance. It is well known that very little land is in the possession of those who owned it when the highway was laid out, or of their heirs; and there would be scarcely an instance where the descendants of the original proprietors could be traced. The consequence would be, that every man owning land lying on a highway, would be liable to have the street on his front dug up, and even the ornamental trees in front of his house cut down, by any person who was mischievous and wicked enough to do it, and there would be no possibility of redress. Such a monstrous principle cannot be a part of the common law. If it had not been universally understood, that the conveyance of land adjoining a highway conveyed the right of soil in it, express words for that purpose would long since have been inserted in deeds.

Much reliance has been placed, on the part of the plaintiffs, on the case of *Goodtitle*, d. *Chester*, v. *Alker &*
*Elmes*, 1 *Burr*. 133. but that case only settles the point, that the owner of the land on both sides of the way can maintain ejectment for a part of the way, covered by part of a house, and recover the land subject to the easement.

Whether this decision is correct or not, is immaterial in this case; for admitting it to be correct, yet the plaintiffs not being adjoining proprietors they cannot maintain this action.

But what is the object of the plaintiffs in this action? Do they wish to recover the land subject to the easement of a highway, for the accommodation of the public, without any regard to their own interest? I apprehend they contemplate a very different object. It is well known that decisions have been rendered that where the original proprietors of towns have laid out highways wider than was necessary, the land not wanted for the highway belonged to the proprietors, and might be taken up and laid out in lots. Sanction this action, and we shall see the descendants of the original proprietors of towns start up by thousands; every ancient highway will be measured; where they are a little wider than is absolutely necessary for public travelling, surveys will be made of the excess; and lots will be laid out in front of half the farms in the state. But the period has arrived when deviations from the well known rules of the common law will not be encouraged.

That common law most clearly is, that when a highway is established, the public become vested with a right to use it for passing, which cannot be narrowed, varied, or destroyed by the act of any town or individual, or by the lapse of time; for there can be no presumption for a nuisance in a highway against the public right; and that the proprietors of lands adjoining the highway have the freehold of the soil as appurtenant to their lands, and can maintain trespass for digging the soil, cutting the trees, erecting encroachments, or for any other injury whatever.

Accordingly, I concur in opinion that a new trial ought not to be granted.

It has been decided by the supreme court of the state of *New-York* that the general rule there was, that the fee of a highway belongs to the owner of the adjoining ground, and that the sovereign has only a right of passage. *Cortelyou* v. *Van Brundt, 2 Johns. Rep.* 357,

June, 1810.

STILES
v.
CURTIS.

June, 1810.

REEVE, J.   I am of opinion that a new trial ought not to be granted; but I do not assent to the proposition that the fee is in the proprietor of the adjoining lands.   I go on the ground that the original proprietors have no title, and cannot maintain this action.   I am not bound to find a proprietor.

MITCHELL, Ch. J. was of the same opinion.   He supposed the original proprietors had parted with all their right, by laying out the highway; and that the proprietors of any other town had as good a claim as the present plaintiffs.   He did not agree that the proprietor of land adjoining to a highway owns to the centre of that highway.

N. SMITH, J. being an inhabitant of the town of *Woodbury*, gave no opinion.

New trial not to be granted.