READ *against* LEEDS.

The proprietor of land adjoining a highway may have an exclusive possession and seisin of the soil of the highway, subject to the public easement; and consequently, he may be dispossessed and disseised thereof, subject to such easement.

The owner of the soil of a highway has the same remedies, by action of trespass or ejectment, to prevent encroachments, and to defend his rights against the adverse occupancy of another, as owners of lands not subject to any easement.

In trespass *qu. cl. fr.*, it appeared, that the *locus in quo* was in the public highway, *South* of the middle line ; that in 1842, the defendant took a deed of the *locus in quo*, went into possession thereof, set out trees thereon, enclosed it partly by a fence, and had ever since used and occupied it exclusively and adversely ; and the plaintiff claimed title thereto, by virtue of a deed, executed in 1843, purporting to convey to him, land bounded on the *North* by such highway ; it was held, 1. that the plaintiff's grantor, at the time of executing the deed under which the plaintiff claimed, was ousted of possession, by the entry and possession of the defendant, and that such deed was therefore void, under the statute against selling pretended titles, as to the *locus in quo* ; 2. that if the defendant, and those under whom he claimed, had, for

more than fifteen consecutive years, before the commencement of this action, been in the exclusive and adverse possession of the *locus in quo*, he had acquired a title thereto, as to individual rights, although the public easement still remained.

*Fairfield,*
July, 1848.

Read
*v.*
Leeds.

THIS was an action of trespass *quare clausum fregit*, with a count in *case*, under the late statute.

The cause was tried at *Fairfield, April* adjourned term 1848, before *Ellsworth,* J.

On the trial, it was proved and admitted, that the plaintiff was the owner of a certain piece of land in the town of *Stamford*, bounded *North* by a highway; he having acquired a title thereto, by a deed from *Stephen B. Provost*, executed and delivered to the plaintiff, in 1843. The plaintiff claimed to have proved, that the defendant had done the acts complained of in the declaration; and that the *locus in quo* was in said highway, opposite the plaintiff's land, and *South* of the centre of said highway.

The defendant admitted, that he had entered upon the *locus in quo*, excavated the soil and erected a building thereon, as alleged in the declaration; but he claimed, and offered evidence to prove, that the *locus in quo* was not, and never had been, a highway, but was the private property of the defendant and those under whom he claimed; and that if such was not the fact, still the plaintiff could not recover.

It was proved, and not denied, that in *April* 1842, the defendant, took a deed of the *locus in quo*, for the sum of 500 dollars, from the administrators of *Simeon H. Minor*, deceased, under an order of sale by the court of probate. The defendant claimed to have proved, that immediately upon taking said deed, he set out trees upon the land, enclosed it, to a considerable extent, with a fence, and had ever since used and occupied it, exclusively and adversely.

The plaintiff denied, that the defendant had taken and continued any such exclusive possession, and offered evidence to that effect.

The defendant thereupon claimed, that if the *locus in quo* was a highway, and *South* of its centre, yet if the jury should find, that the defendant took, and had ever since continued to maintain, such exclusive and adverse possession of the land as he claimed, the deed of the plaintiff was void,

and gave him no title on which he could recover, for the entry and acts of the defendant : further, that if the jury should find, that the plaintiff had never been in possession, but that the defendant himself had been in possession, from the date of his deed, then the plaintiff could not recover in trespass : also, that if the jury should find, that the defendant, and those under whom he claimed, had, for more than fifteen consecutive years, before the commencement of this action, been in the exclusive and adverse possession of said land, as he claimed the evidence proved, then he had acquired a title thereto, as to individual rights, although the public might still have a right to travel over it, and it was part of an established highway.

The court, in opposition to the claims of the plaintiff, charged the jury in conformity to the claims of the defendant. The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial for a misdirection.

The case was submitted, upon the briefs of counsel, by *Booth, Butler* and *Carter*, in support of the motion ; and by *Hawley* and *Ferris*, contra.

In behalf of the plaintiff, it was claimed, 1. That upon this motion, it must be taken for granted, 1. That the *locus in quo* was a public highway ; and that the deed from *Provost* to the plaintiff, conveyed to him the soil to the centre of the highway. *Champion* v. *Pendleton*, 13 *Conn. R.* 23. *Chatham* v. *Brainerd*, 11 *Conn. R.* 60.

2. That it must also be taken for granted, that the deed, from the administrators of *Minor* to the defendant, conveyed no title, and was admissible only for the purpose of explaining the character of the defendant's possession.

3. That the question then is, whether the acts done by the defendant were sufficient to avoid the deed from *Provost* to the plaintiff ; or, in other words, whether they amounted to an ouster of *Provost*, so as to bring the deed from him to the plaintiff within the statute against selling pretended titles. Can such be the effect of placing an obstruction upon the public highway, which may be regarded as a nuisance, and abated as such, by any individual ?

4. That that part of the charge, by which the jury were

instructed, that if the defendant, and those under whom he claimed, had, for more than fifteen consecutive years, been in possession of the *locus in quo,* as claimed by him, he had acquired a title thereto, as to individual rights, was errone- ous. A person creating a nuisance in the public highway, how long soever such nuisance may be continued, acquires no title, as against any one. As against the public, he surely acquires no right. Every day's continuance is regarded as a repetition of the nuisance. Is any right acquired as against the adjoining proprietor? No case can be found in support of such a position; and it is opposed to all princi- ple. The point was directly decided, in the case of *Parker & al.* v. *Framingham,* 8 *Metc.* 260.

For the defendant, it was insisted, 1. That as he had the adverse possession of the *locus in quo,* under a claim of title, at the time the plaintiff obtained his deed from *Provost,* the latter was, by such adverse possession, *ousted;* and con- sequently, his deed of the *locus in quo* was, by the statute, void. That exclusive possession, with claim of ownership, is, in its character, adverse, and necessarily so, see *Allyn* v. *Mather,* 9 *Conn. R.* 114. and many other cases. The right of the public in a highway, is merely a right *to pass.* The public have *no possession of the soil,* in the legal sense of that expression—no more than the proprietor of a *private way* has possession of the land over which that way runs. The right of the public, in the one case, and of the individual, in the other, are, in character, and as to all legal incidents, pre- cisely alike. The owner of the soil is, in each case, equally entitled to every remedy, which the owner of the soil can, in *any* case, have, either to recover damages for an injury to the possession, or to recover the possession itself. The own- ner of the soil may maintain trespass. *Peck* v. *Smith,* 1 *Conn. R.* 135, 6, 7. 146. *Watrous* v. *Southworth,* 5 *Conn. R.* 305. *Chatham* v. *Brainerd,* 11 *Conn. R.* 60. *Champ- lin* v. *Pendleton,* 13 *Conn. R.* 23. *Cortelyou* v. *Van Brundt,* 2 *Johns. R.* 357. and many other cases. He may also maintain ejectment. *Goodtitle* d. *Chester* v. *Alker & al.* 1 *Burr.* 133. 136. 143. But if a private way is ob- structed, can the proprietor of the way maintain ejectment for it, or even trespass? If a highway is obstructed, the

offender may indeed be punished, by indictment or informa-tion ; but the public, assuredly, could not recover the high-way *in ejectment, nor maintain trespass.*

2. That if the owner of the soil, and he alone, can main-tain ejectment or trespass, for an obstruction, it follows, of course, that he may be *ousted* of his possession ; and such ouster must have the same effect in avoiding a deed, or, when continued for fifteen years, in barring the owner of his title, as in any other case. The right of the public *to pass,* du-ring the time, does not prevent the possession being *adverse,* any more than the right of an individual to pass in a private way, interferes with the possession of the owner of the soil. Even a tenant in common may be ousted, by a stranger, and by that ouster continued for fifteen years, may lose his title, though his cotenants have all the while been in possession. *Price* v. *Lyon,* 14 *Conn. R.* 280. 289.

The case of *Parker* v. *Framingham,* 8 *Metc.* 260., cited on the other side, did not present for decision a question at all like the one here presented. The claim was, that the owners of the buildings on the land conveyed by *Buckmin-ster* had a right of way, as against the turnpike company, acquired by user, and as against *Buckminster,* by virtue of the grant from him. The court decided, (*p.* 266, 7.) that the deed did not convey to the *filum via,* but by its terms, limited the grantee to the outside line of the highway ; and this alone determined the case. But if it were otherwise, (*p.* 267, 8.) still the ground over which the town way was laid, was already, by *Buckminster's* deed or deeds, made a permanent open way for the proprietors of the buildings ; the court holding, that the bounding of the land on the high-way, amounted to a covenant that the grantees should al-ways have a way there ; and therefore, the laying-out of a town way over the same open way, did the owners of the soil no damage, and they of course were entitled to none.

CHURCH, Ch. J. This case has been submitted to us, up-on the briefs of counsel. We have examined the authorities referred to, and are persuaded, that the charge of the judge at the circuit, is free from legal objection.

We consider the case now, as conceding, that the *locus in quo* was a part of a public highway, and upon that side of

the centre which adjoined the plaintiff's land. The plaintiff was the adjoining proprietor.

Notwithstanding this, and while the defendant concedes, that in such case, the plaintiff will be considered, *prima facie*, as owning and possessing the land to the centre of the road, aside from the facts upon which he relies; yet he claims, that, in this case, the exclusive and adverse possession of the land, subject to the public easement, was in himself; and that the plaintiff was thereby ousted therefrom, when he received his deed from *Provost*, in *April* 1843, under which alone he claims title; and also, that he had acquired a title, by the continuance of such adverse possession, for more than fifteen years, by himself and others from whom he derives title. The whole case depends upon the legal effect of such adverse and exclusive possession as is claimed by the defendant.

The question is not, whether the defendant has acquired any rights against the public; nor whether he can be now treated as one who has erected and continued a public nuisance upon a highway; but what are his rights, as against the private claims of this plaintiff, to the ownership of the soil of the highway?

We had supposed, that the real nature of a highway and of the rights of its adjoining proprietors, had long ago been settled in this state; and we do not think we can define them more clearly than has been done by our predecessors. This subject was first partially discussed and considered, in the case of *Stiles* v. *Curtiss*, 4 *Day*, 328.; and again, more elaborately, in the case of *Peck* v. *Smith*, 1 *Conn. R.* 103. By the latter case, we consider it to have been decided, that this subject was governed by the principles of the common law, unchanged by any statute provisions of our own; and that, by that law, the soil of a highway is *prima facie* in the adjoining proprietors to the centre of the road, subject to the rights of public travel and its incidents; and that such proprietors can maintain action of trespass founded upon their possession against a stranger, for any acts of trespass committed upon it, not justified or excused under the public right. And this has been recognised as the law of this state, in the cases of *Watrous* v. *Southworth*, 5 *Conn. R.* 305. *Chatham* v. *Brainerd*, 11 *Conn. R.* 60. *Champlin* v. *Pendleton*,

13 *Conn. R.* 23.    And by the common law also, an action of ejectment will lie, by such adjoining proprietor, for the recovery of the possession and seisin of which he has been deprived, by the ouster and disseisin of another.    *Goodtitle* d. *Chester,* v. *Alker,* 1 *Burr.* 133. 2 *Selw. N. P.* 728.    1 *Saund. Pl. & Ev.* 447.    1 *Sw. Dig.* 508.    *Peck* v. *Smith,* 1 *Conn. R.* 103.    Opinion of *Swift,* J. *p.* 132. & seq.    The law above cited proves, that the proprietor adjoining a highway may have an exclusive possession and seisin of the soil of the highway, subject to the public easement.    This being so, it follows, as a legal consequence, that he may be dispossessed and disseised thereof, subject to such easement, as in other cases.

Some distinguished judges have supposed, that the right of the public travel upon a highway, is inconsistent with the right of private possession ; and that these cannot exist together.    We do not see this.    When a highway is established, the owner of the land over which it is laid out, is in possession, and the laying-out of the road does not dispossess him :—it only confers upon the public an easement or right to use the land, for a specified purpose only, while, for all other purposes, the right of possession and the actual possession may remain as before.    And it can make no difference, in this respect, whether this easement be imposed by law, for a public purpose, or whether it be created by the owner of the land, for private use ; as where a private right of way is granted, or a right to dig for ores, &c.    All these are burthens upon the land, and interfere with the owner's full use of it ; but they do not operate as an ouster of the proprietor, nor to transfer his right of possession, nor his interest in the soil, to the public, or to another.    The public has a benefit in the land, but not a possession.    Therefore, as we suppose, private rights to land, subject to an easement, may be acquired, transferred or lost, as if no such incumbrance existed.

We perceive no good reason why it should be otherwise ; nor why a highway over one's land should prevent another from acquiring both an actual and adverse possession of it, as against the owner of the soil ; and thus, by a disseisin, to obtain a title, as in other cases.    A possession of, and a title to, such land, may be acquired, by deed from the owner :

why not, therefore, in any other way, by which title may be legally transferred? The owner has the same remedies, by action of trespass or ejectment, to prevent encroachments, and defend his rights against the adverse occupancy of another, as in all other cases; and if he neglects to do this, but submits to it, why should not such adverse possession under claim of title, ripen into right, by continuance, on the one side, and acquiescence, on the other? The public right of passage is not inconsistent with such a result.

It is said also, that the acts of possession under which the defendant claims, were public nuisances, and however long continued, could never lead towards the acquisition of a title to the plaintiff's land. The same acts, if done by the plaintiff, would have been nuisances, to the same extent. And the question between these parties, is not, what was the effect of the acts upon the public rights, but how did they operate as against the proprietor of the soil, who never complained of them as nuisances, or in any other way? As encroachments upon the public highway, the plaintiff's right of soil merely, gave him no right to complain of the defendant's acts; and as encroachments upon his own possession, he acquiesced in them, and, as we think, cannot now evade their legal effect upon him, by calling them public nuisances.

Indeed, it seems to us, that the plaintiff, by prosecuting this action, recognises the doctrine which we declare. To sustain it, he must show himself to be in the actual possession of the land covered by the way, irrespective of the public easement; and that such possession has been disturbed by the defendant; and if disturbed or injured, to any extent, then it may have been even to the extent of an actual disseisin. If this be granted, and if such a disseisin of the plaintiff actually existed, and continued, when the plaintiff received his deed from *Provost*, as the defendant claimed, on the trial, then the plaintiff acquired no title by that deed; and if, as the defendant further claimed, such disseisin had continued for fifteen years, it has operated to confer a title by possession upon the defendant, as the jury were, in this case, instructed.

The only case to which the plaintiff's brief refers us, as opposed to the foregoing views, is *Parker* & al. v. The inhabitants of *Framingham*, 8 *Metc.* 260. We think the plaintiff mistakes the extent of that authority. The point relied

*Fairfield,*
July, 1848.

Read
*v.*
Leeds.

upon, in that case, by the present plaintiff, only proves, what we are not disposed to deny, that the acts there supposed to constitute an adverse possession of the soil of the highway, were not of such a character as would amount to it. The claimant, as is usual in country towns and villages, occupied a portion of the highway, as a place for depositing his fire wood, farming utensils, &c., which the court considered as done by virtue of a general license and permission for that purpose, to be presumed from the common practice in such cases ; and they denied that they amounted to an adverse possession. But here, the acts of possession and claim of title were unequivocal : there was no room left for doubt or construction as to the nature of the defendant's acts of ownership ;—he had enclosed the *locus in quo,* with a fence, and set trees upon it ; and the jury have found the fact to be, that he had used it exclusively and adversely. Such acts operated as an ouster and disseisin of the plaintiff. This being so, the plaintiff, upon the principles laid down by the judge, and which we approve, could not recover. And therefore, we do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.