[No. 1151.]

### D. LACHMAN ET AL., RESPONDENTS, v. THOMAS BARNETT ET AL., APPELLANTS.

POSSESSION OF LAND—EASEMENT OF WAY OVER, DOES NOT GIVE.—The mere enjoyment of an easement of the right of way over land does not give the owner of the easement possession of the land over which the easement of way exists.

FORCIBLE ENTRY AND UNLAWFUL DETAINER—FORCE.—Every entry into the lands or tenements in the actual possession of another, with strong hand, or with a multitude of people, is forcible.

IDEM—PLEADINGS AND EVIDENCE, SUFFICIENCY OF.—The pleadings and evidence reviewed: *Held,* that the jury were justified, therefrom, in finding both a forcible entry and forcible detainer.

IMMATERIAL EVIDENCE—EXCLUSION OF.—The exclusion of evidence which merely tended to prove the use of the easement by the defendants and their tenants: *Held,* not erroneous or prejudicial to defendants.

APPEAL from the District Court of the Seventh Judicial District, Washoe County.

The facts are stated in the opinion.

*William Webster*, for Appellants.

*Thomas E. Haydon*, for Respondents.

By the Court, LEONARD, J.:

In the complaint herein it is alleged that on and prior to March 25, 1879, and at all times since April 10, 1871, plaintiffs were and have been peaceably in the actual possession of the south twenty feet of lots twenty-three and twenty-four, in block O, in the town of Reno, fronting twenty feet on the west line of Virginia street, and extending along the north line of the alley running easterly and westerly through said block fifty feet, together with the tenements, hereditaments and appurtenances of said land; that on the twenty-fifth of March, 1879, while plaintiffs were peaceably in the actual possession of the west ten by twenty feet of the above described land, defendants, without right of entry given by law, with strong hand, did forcibly, wrongfully and unlawfully make entry into said west ten by twenty feet of land, and the tenements thereon, and knock and tear down plaintiffs' fence inclosing the same, and otherwise injure the rights and possessions of plaintiffs to said lands and tenements, and ever since said wrongful entry of defendants, they have forcibly, wrongfully and unlawfully detained the possession of said west ten by twenty feet, and the tenements thereon.

In their sworn answer, defendants specifically deny plaintiffs' ownership or possession; deny that they entered without right given by law, or forcibly, wrongfully, or unlawfully, on the twenty-fifth day of March, 1879, or at any other time; or that they knocked down the fences of plaintiffs' enclosing said land; or that they forcibly, wrongfully, or unlawfully detain said land, or the west ten by twenty feet thereof, or the tenements thereon. For affirmative defense, defendants allege that they own the fee and occupy the north eighty feet of said lots twenty-three and twenty-four; that prior to April, 1871, they were the owners of the south

twenty feet of said lots; that on or about April 8, 1871, defendant Thomas Barnett sold and conveyed said south twenty feet of said lots to George Becker, (plaintiffs' grantor,) but reserved a right of way over said twenty feet so conveyed, to the property owned by defendants adjoining said twenty feet on the north; that said reservation was in writing, and contained in the deed of conveyance to said Becker, and embraced a strip ten feet inside, on the rear of said twenty by fifty feet conveyed to Becker, for alley-way purposes; that such right of way was reserved for the exclusive use and convenience of egress and ingress to their other property on lots twenty-three and twenty-four; that said Becker by said deed was limited to the use of twenty by forty feet of the twenty by fifty feet conveyed; that from the date of said conveyance, defendants had the exclusive use of said west ten by twenty feet for alley-way purposes, until March 25, 1879, when plaintiffs wrongfully and unlawfully entered upon said ten feet of alley, and commenced to inclose the same, and while said alley was in the possession, and open for the use of defendants; that plaintiffs' obstructions were a nuisance, and, after plaintiffs' refusal to remove the same, defendants removed them in order that they might have, as it was their exclusive right to have, the use of said alley-way at all times.

The statute provides that,

"No entry shall be made into the lands, tenements, or other possessions, but in cases where entry is given by law; and in such case, only in a peaceable manner, not with strong hand, nor with a multitude of people. When such entry is forcibly made, or where the entry shall be made in a peaceable manner, and the possession shall be held by force against the person entitled to the possession, the person so forcibly put out, or so forcibly holden out of possession, shall be restored to such possession by action, to be commenced and prosecuted as in this act provided." (Comp. Laws, secs. 41, 42.)

"On the trial of any action of forcible entry, or forcible detainer, the plaintiff shall only be required to show, in

addition to the forcible entry or forcible detainer complained of, that he was peaceably in the actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer. The defendant may show in his defense that he or his ancestors, or those whose interest in such premises he claims, have been in the quiet possession thereof for the space of one whole year together, next before the commencement of said action, and that his interest therein is not ended or determined, and such showing shall be a bar to the action in all cases provided for in this act." (Id. sec. 50.)

Undoubtedly, under the statute, plaintiffs were bound to allege and prove that they were in the actual, peaceable possession of the west ten by twenty feet described, or some part thereof; that the defendants forcibly entered thereon and forcibly detained the same; or that defendants forcibly held possession which plaintiffs were entitled to enjoy, although the entry was peaceable.

The undisputed facts shown by the pleadings and evidence make it clear that at the time of defendant's entry, plaintiffs were in the actual, peaceable possession of the entire property described in their complaint, including the west ten by twenty feet thereof. Plaintiffs held the legal title to the land, and the only right that defendants claimed was an easement therein—the right of way over the west ten by twenty feet for alley-way purposes. This right they exercised, let us say, up to the time of the alleged obstruction of the passage-way by plaintiffs, and for many years prior thereto. But, as against plaintiffs, the mere enjoyment of this right, if such they had, did not give them possession of the land over which the easement of way existed, or oust plaintiffs therefrom. "The ownership of an easement, and that of the fee in the same estate, are in different persons. Nor does the interest of the one affect that of the other, so but that each may have his proper remedy for an injury to his right, independent of the other. Thus, the owner of the fee may recover his seizin by a proper action in his own name, and the owner of the easement, if

disturbed in the enjoyment of it, may sue for such disturbance in his own name.   It has accordingly been held that the owner of the soil and freehold of the land over which a road is laid may have trespass against a stranger for acts of trespass done upon the land, as for cutting a tree or digging up the soil, and may have ejectment against a stranger to recover the land, if deprived of the possession of it by him. In other words, he has exclusive seizin and possession of the soil of the highway, subject only to the easement of the public.   *   *   *   And, if the owner of the way shut it up and deny the owner of the land access to the same, the latter may have ejectment against him to regain the land covered by the way.'' (Washb. Easem. 8, 9, 15, 259, 264, 265; Tyler, Ej. 41.)   '' When a highway is established, the owner of the land over which it is laid out is in possession, and the laying out of the road does not dispossess him; it only confers upon the public an easement, or right, to use the land for a specified purpose only, while for all other ·purposes the right of possession, and the actual possession, may remain as before.   And it can make no difference, in this respect, whether this easement be imposed by law for a public purpose, or whether it be created by the owner of the land for private use.   *   *   *   All these are burdens upon the land, and interfere with the owner's full use of it; but they do not operate as an ouster of the proprietor, nor to transfer his right to possession, nor his interest in the soil, to the public or to another.   The public has a benefit in the land, but not the possession.'' (*Read* v. *Leeds*, 19 Conn. 187; and see *Wood* v. *Truckee Turnpike Co.*, 24 Cal. 487; *San Francisco* v. *Calderwood*, 31 Cal. 589.)

It being settled law that the owner of an easement, like the one claimed by defendants, has no right to possess the land, as such, upon which it is imposed, but a right merely to enjoy the way, and that the owner of the soil burdened with the easement is, in law, in possession of the land, it necessarily follows, as before stated, that the mere exercise of the right of way by defendants did not give them actual possession of any portion of the lots first described in plaintiffs' complaint.    VOL. XVIII—35

At the trial defendants did not pretend that they had used or occupied the west ten by twenty feet except as a passage-way. They did not contradict plaintiffs' evidence to the effect that the latter were put in possession of the entire premises by Becker, their grantor, in April, 1871, and that plaintiffs and their tenants, until March 25, 1879, used all the west ten by twenty feet, with the exception of a passage-way about three feet wide, for storing wood, boxes, bottles, and other purposes; or that this passage-way was used in common by plaintiffs and defendants. There can be no doubt that plaintiffs were peaceably in the actual possession of the land over which defendants claim an easement on the twenty-fifth day of March, 1879, or that they were entitled to such possession at the time of the trial. It will be noticed that, in their answer, defendants do not deny the alleged entry. They only deny that it was forcible, wrong-ful or unlawful. Nor do they deny the allegation that ever since March 25, 1879, they have detained the possession of the west ten by twenty feet, and the tenements thereon, from plaintiffs. They only controvert the allegation that such detention has been forcible, wrongful or unlawful. It is admitted then that defendants entered upon premises which were in the actual, peaceable possession of plaintiffs, and that, at the time of the trial, they detained the posses-sion of the same from them. They justify their entry and the detention by alleging that they had a right of way which plaintiffs obstructed, and that, by reason thereof, neither the entry nor the detainer was forcible, wrongful or unlaw-ful. There is no proof or admission of the claim of a right of way before us, but if there was it would not be a justifi-cation of a forcible entry or forcible detainer. The statute is plain upon this point, and all the authorities support the statement just made. Under the statute every entry into the lands or tenements in the actual possession of another, with strong hand or with a multitude of people, is forcible. The object of the statute was not to try titles, but to pre-serve the peace and prevent violence.

At defendants' request the court instructed the jury that,

"if they found from the evidence that defendants, or either of them, knocked down the fence constructed by plaintiffs, for the purpose of removing the same from the passage-way which they claimed over the lands of plaintiffs, and for that purpose only, and not for the purpose of taking actual possession of the lands over which they claim the passage-way, nor for the purpose of taking possession of any part of the fifty feet claimed to be in the actual possession of the plaintiffs at the time the fence was knocked down, and that defendants did not take the actual possession of any part of said fifty by twenty feet, to the exclusion of plaintiffs, they should find for defendants."

Under that instruction the jury must have found that defendants knocked down the fence for the purpose of taking actual possession, and that they accomplished their purpose. They were justified by the evidence and the allegations, denials and admissions in the answer, in so finding. It is true, Thomas Barnett, one of the defendants, testified that when he knocked down the fence, he "used no more force than was necessary; that what he tried to do was to get the boards off for the purpose of opening the passage-way; that he did that and nothing more;" but it is quite evident that his object in removing the obstruction was for the purpose of taking and holding possession of the land. The answer shows this, and there was evidence supporting the same.

This action was commenced on the day of defendants' entry. In their answer, filed four days thereafter, they deny that plaintiffs are the owners, or have been in possession of the south twenty feet of lots twenty-three and twenty-four. They allege that their reservation of a right of way embraces a strip ten feet by twenty, in the rear of the lots mentioned, for alley way purposes, and that such right was reserved for the exclusive use and convenience of defendants; and that by the express provisions of their deed, their grantee, Becker, was limited to the use of twenty by forty feet; that from the date of their said conveyance, they had had the exclusive use of said ten feet

for alley-way purposes ; that plaintiffs wrongfully and unlaw-
fully entered upon said ten feet and commenced to inclose
the same, while said alley-way was in the possession of and
open for the use of defendants ; that the fence built by
plaintiffs was a nuisance, which defendants removed in
order that they might have, as it was their exclusive right
to have, the use of said alley-way -at all times. In their
amended answer, defendants allege that since April, 1871,
they have had the full use, and peaceable, exclusive and
lawful possession of the alley-way referred to, for the pur-
pose of egress and ingress to and from their property on the
north eighty feet of lots twenty-three and twenty-four.

Defendant Thomas Barnett testified that he gave one
Henry, a tenant of plaintiffs, permission to put up a small
kitchen in the north-west corner of the west ten by twenty
feet, used by defendants for an alley-way. He also stated
that he did not know that the passage-way had been at any
time obstructed by plaintiffs, until March 25, 1879 ; that
he had seen boxes in the passage-way, which he threw into
the alley ; that at one time plaintiffs piled some wood in
the passage-way, which he removed by throwing it into
the alley ; that he told one of the plaintiffs, after knocking
down the fence on the twenty-fifth of March, to take away
his boards, or he should remove them out of the way, and
that Lachman removed them, and all the materials used in
making the fence.

One of the plaintiffs testified that they made no use of
the west ten by twenty feet after March 25th ; that they
were deterred from using this land, or attempting to inclose
it, by what occurred on that date ; that they did not try to
rebuild the fence, because they immediately brought this
action, and thought it their duty to abide by the law ; that
he was not a fighting man, and did not want to renew any
cause for trouble or personal difficulty.

Without further analysis of the pleadings or evidence, it
is sufficient to say that the jury were justified in finding
both a forcible entry and a forcible detainer. If it be true
that defendants were entitled to unobstructed passage over

the land in question, they should have adopted lawful methods for the enforcement of their rights. They were not justified in attempting to obtain them by forcible means. (*People* v. *Leonard*, 11 Johns. 509; *Mitchell* v. *Davis*, 23 Cal. 384; *Porter* v. *Cass*, 7 How. Pr. 445; *People* v. *Van Nostrand*, 9 Wend. 53; *Voll* v. *Hollis*, 60 Cal. 573; *Allen* v. *Tobias*, 77 Ill. 171; *Krevet* v. *Meyer*, 24 Mo. 110; *Harris* v. *Turner*, 46 Mo. 439; *Bartlett* v. *Draper*, 23 Mo. 408; 2 Bish. Crim. Law, (7th Ed.) sec 490.)

If we are right thus far, the several assignments of error will be readily disposed of.

1. The court did not err in excluding evidence tending to show that the tenants of defendants used the passage-way for the purposes of egress and ingress. Should it be conceded that such evidence was technically admissible, its exclusion could not have injured defendants, because the testimony all showed that they themselves, and their employes, so used it uninterruptedly until March 25, 1879; and if such use by them did not give them actual possession, it could have added nothing of value to their case, to have shown in addition, that their tenants used it in the same manner. In other words, proof of such use by defendants alone, accomplished everything that undisputed evidence of use, also, by their tenants, could have done. It could not have strengthened defendants' case to have been allowed to show that their tenants made the same use of the alley-way that they did. But if the exercise of the right of way by defendants' themselves did not give them actual possession, it cannot be said that such use by their tenants gave it.

2. It was not error to exclude the testimony of witness Pechner, to the effect that in 1871, while he was a tenant of defendants, he and his partner built a fence at the south end of the west ten by twenty feet, and put a gate therein, by the persuasion of defendants. It is said that this testimony was especially material for the purpose of showing the use and control by defendants of the passage-way in question. But it would not have tended to show anything of the kind. Nor would it have tended to show that the

possession was not in plaintiffs at the time of the entry by defendants. Pechner claimed no interest in the land as such, or right of possession thereto, adverse to plaintiffs, in 1871 or afterwards; and evidence that he put up a fence at one end of the ground, for his own accommodation, would not show that plaintiffs were not in possession, or that defendants were, at the time of the entry.

3. The motion for a nonsuit should not have been granted for reasons before stated.

4. It was not error to strike out the testimony of witness Jacobs, to the effect that, several years before the trial, he heard one of the plaintiffs tell one Lipscomb that he wished witness "would remove certain wood from the alley belonging to the latter, as the defendants would object to its being there;" and the same is true as to the testimony of witness Hamilton, to the effect that "in 1871 or 1872 one of the plaintiffs told witness that he had concluded not to build a brick building, but would put up a frame, as he had to leave an alley-way for defendants and their tenants." The most that can be claimed for this testimony is that it tended to show a right of way a long time prior to defendants' entry. It did not tend to show that defendants were, at that time, in possession of the land, or that plaintiffs were not. It was not relevant to any material issue in the case.

The judgment and order appealed from are affirmed.