## WATROUS *against* SOUTHWORTH.

*Middlesex,*
July,
1824.

Watrous
*v.*
Southworth.

Where a party, to shew the laying out, width and extent of a highway, offered in evidence a copy, authenticated from the town records, of a report of a committee, made in 1713, laying out a highway, accompanied with proof that it was the same highway as the one in question, and that the travel had ever since been on some parts of it ; it was held, that this document was inadmissible, 1. because towns, in 1713, had not by law the *power* of laying out highways ; 2. because it did not appear, that such report had been *accepted* by the town.

Nor could such power and acceptance be *presumed* from time and use ; as the lapse of time alone would afford no presumption in relation to the subject ; and the use was not commensurate with the highway claimed.

Nor was such report *confirmed*, by the act of *May*, 1723, *tit.* 97. *c.* 10. (ed. 1808.) as that act regarded grants of estates only, and not public rights of passage.

Though it is a general rule, that the fee of a highway between two adjoining proprietors, is owned by them equally, each owning to the centre ; yet this rule is founded on the presumption that they originally owned the land taken for the highway equally ; and where it appears, that one of them owned the whole or the greater part of the land, the presumption fails, and the rule is inapplicable.

A right acquired by disseisin, must be limited, by the actual occupation of the disseisor.

Therefore, where *A.* and *B.* were adjoining proprietors of land on opposite sides of a highway ; and *B.* enclosed, by a stone-wall, a part of such highway contiguous to his land, not needed for the public travel, and occupied it exclusively, for twenty-eight years, claiming it as his own ; it was held, that assuming that *B.* thereby acquired a title to the land so enclosed and occupied by him, disburthened of the public easement, yet the right of *A.* in the highway contiguous to his land, remained unaffected, the centre of the original highway, and not of the contracted one, being still the line of separation between his estate and that of *B.*

*Qu.* Whether the enclosure of part of a highway, by an individual, and the exclusive occupation of it, for twenty-eight years, afford presumptive evidence of a grant from the state.

This was an action of trespass *quare clausum fregit* ; tried at *Middletown, February* term, 1823, before *Hosmer*, Ch. J.

The plaintiff owned a farm of land, with a dwelling-house on it, in which he and his family lived, lying on the *East* side of a highway leading from the *South* line of *Haddam* to the head of *Chester* cove in *Saybrook*. This highway was, originally, sixteen rods wide. About twenty-six years ago, the plaintiff set out a row of locust trees in the highway, in front of his house and farm, extending 100 rods in length upon a line parallel to, and at the distance of five rods from the *West* side of the plaintiff's land. These trees the plaintiff preserved, and took care of, until they were grown.

The defendant, to shew the laying out, width and extent of the highway, offered in evidence the report of a committee containing a survey, duly certified from the records of the town

of *Saybrook*, made in 1713, accompanied with proof, that it was the same highway as the one in question, and that the travel had always been on some parts of it, from the date of the survey to the present time. The plaintiff objected to the admission of this record, on the ground that towns then had no right to lay out highways, and that there was no record evidence that the doings of the committee were ever accepted by the town. The Chief Justice sustained the objection, and rejected the record.

The defendant and those under whom he claimed, had owned and occupied a farm of land on the *West* side of the highway, opposite the plaintiff's farm, and the row of trees set out by him, for twenty-eight years next before the commencement of this action, as their own estate in fee-simple. In *March,* 1793, the defendant's father, under whom he claimed, took in and annexed to his farm, all the land on the *West* side of the highway down to within seven rods of the *West* line of the plaintiff's farm, leaving the travelled highway there seven rods wide; and, in the course of the same month, the defendant made a stone wall on this line, which has ever since been kept up. From that time to the present, the defendant has occupied the land so enclosed, as a part of his farm, and claimed it as his own; it not having been needed as a highway. After the wall was built, the plaintiff set out the row of locust trees before mentioned, within two rods of it. At the time stated in the declaration, the defendant cut six of these trees, and carried them away, claiming a right so to do; which was the only trespass complained of. The row of trees in question were on the *West* side of the centre of the highway, as it was left after the erection of the wall; and on the *East* side of the centre, as it previously existed.

The defendant claimed, that he was the lawful owner of the land so enclosed, of which the jury might presume a grant to him; that the highway, where the trees were cut, was but seven rods wide; and that he, of course, had a right to cut them.

The Chief Justice instructed the jury, that assuming the defendant's possession of the land enclosed by him, gave him a title to it, disburthened of the easement; yet his right in the residue of the highway was not thereby increased, nor the plaintiff's right therein diminished; but the jury must take the centre of the highway, as it existed before the defendant built the wall, and contracted the travelled road, and consider *that*

as the *West* boundary of the plaintiff's land, just as if no such encroachment had been made.

The plaintiff obtained a verdict; and the defendant moved for a new trial, for the rejection of evidence offered by him, and for a misdirection.

*Daggett* and *Staples*, in support of the motion, contended, 1. That the record offered by the defendant, ought to have been received, to shew the laying-out of the highway and the extent of it. In 1713, the original proprietors and the town were the same ; and this is the mode, which was universally adopted to lay out town highways. The mode has been sanctioned, by long usage, and the decisions of our courts. *Bundy* v. *Sabin*, 2 *Root* 54. *Buel* v. *Clark* & al. 1 *Root* 49. *Stiles* & al. v. *Curtis*, 4 *Day* 328. *Litchfield* v. *Wilmot*, 2 *Root* 288. *Peck* v. *Smith*, 1 *Conn. Rep.* 109. 111, 2. 127. 133. *Stat.* 430. *tit.* 97. *c* 10. *Preamble.* (ed. 1808.)

If a highway could be legally surveyed and laid out, in this manner, its acceptance by the town, will now be presumed.

2. That the defendant acquired, by his exclusive occupation of the land enclosed, a title to it as a purchaser, and with all the rights of a purchaser. He therefore holds to the centre of the road. It is an immaterial enquiry, with respect to this question, how wide the highway once was, or from whom it was originally taken. If one third of a highway be taken from *A.* on one side, and two thirds from *B.* on the other side, still *A.* and *B.* will each own to the centre, while the highway remains. *Peck* v. *Smith*, 1 *Conn. Rep.* 106. *Stiles & al.* v. *Curtis*, 4 *Day* 333. 337.

But let the enquiry be made ; what will be the result ? The highway was once sixteen rods wide, and the plaintiff owned the *East* half, *viz.* eight rods. The defendant has now an absolute title, not only to the eight rods on the *West* side, which originally belonged to him, but to one rod, which originally belonged to the plaintiff. Now, from the exclusive occupation, by the defendant for twenty-eight years, the law presumes a *grant* from the plaintiff to him of this one rod lying *West* of the present highway. This grant, like any other grant of land adjoining a highway, will give the grantee a title to the centre of the highway, subject only to the public easement.

If the doctrine claimed by the plaintiff be sound, he may erect a shed before the defendant's house ; may pull down the

wall ; in short, may do anything, not interfering with the public travel.

*Sherman* and *Hungerford*, contra, contended, 1. That the record offered in evidence on the trial, and rejected, was inadmissible. First, at the time of surveying and laying out the highway in question, the town of *Saybrook* had no legal *authority* to lay out and establish highways. Secondly, there was no evidence that the doings of the committee, were *accepted* by the town. *Fowler* v. *Savage* & al. 3 *Conn. Rep.* 90. Thirdly, if this highway had been laid out by proprietors, instead of a committee of the town, it would not have been valid, until accepted by the public. The dedication of land for a highway, by an individual, does not make it a highway, until it is accepted ; such dedication not being of course beneficial. At any rate, proprietors could lay out a highway only on their own land ; and it does not appear that this highway was laid out on proprietors' land. Fourthly, this highway was not established or ratified, by the confirming act of 1723 ; (*stat.* 439. *tit.* 97. *c.* 10.) because the laying-out and establishment of a highway, is not a *division* or *disposition* of land ; because if it were, it was not, in this case, a disposition of land *in town meeting ;* and because it was not within the *object* of the act, which was merely to prevent the titles of particular estates from being defeated. Fifthly, if the laying out was originally unauthorized, and void, no lapse of time will supply the defects. *Fowler* v *Savage* & al. 3 *Conn. Rep.* 90. 96, 7. The document offered in evidence is no better now, than it was in 1718.

2. That the defendant had not acquired a title to the land enclosed by him, disburthened of the public easement, by his encroachment ; and no grant will be presumed. *Arundel* v. *McCulloch*, 10 *Mass. Rep.* 70.

3. That if a title to the *locus in quo*, could be acquired, by adverse possession, such title would be only co-extensive with the possession. The man who owns land before a highway is laid out, owns it afterwards, subject to the easement. If the highway runs between two adjoining proprietors, each will own to the centre, because they are presumed to have owned in that manner before the highway was laid out. But the narrowing of the road, by an encroachment on one side, does not alter the right of the opposite proprietor. Beyond the line of encroachment, the rights of all parties remain as they were before. *The Proprietors of the Kennebeck Purchase* v. *Springer*, 4 *Mass. Rep.* 416.

Middlesex,
July,
1824.

Watrous
v.
Southworth.

HOSMER, Ch. J. The first question in the case, is, whether the evidence was legally rejected. The defendant offered in proof the report of a committee, certified from the records of the town of *Saybrook*, and made as far back as the year 1713; which report had never been accepted, by the town. The testimony offered, with legal propriety, was repelled. The town, at the date of the report, and long after, had no authority to lay out highways; and had they possessed it, they never accepted the report. It follows, that the supposed highway was not *the act* of the town, but an incipient step towards the procurement of it; and if it had been their act, that it would have been unauthorized, and of no legal effect.

It has been said, that an acceptance, after so great lapse of time, ought to be presumed; but for such presumption I discern no imaginable ground. How can the court infer, that a town did an act, which it had no right to do? It could not be presumed, even if the town had been invested with legal authority, to do the supposed act, unless there was some ground independent of the records, from which to deduce such presumption. The case discloses nothing of this description. The public have never used the highway, commensurate with the above report, but the travel *has only been on some parts of it*. This fact, so far from leading to an inference sustaining the report, repels such presumption; as the use of some parts of a tract of ground claimed to be a highway, is proof only that *those parts* of it are, or were ever intended to be, a highway. Except as to the road of sixteen rods in width, which, perhaps, was a part of that which the committee reported, no user is pretended.

The act of 1723, (*p.* 439. edit. 1808.) which, it has been contended, confirmed the committee's report, has no bearing on the subject. That law was made for the confirmation of grants made by towns, in certain cases, through mistake, and in the belief of authority, with which they were not invested. There must first be a grant, before the confirming act can have any application; but, in this case, there was no grant; no act of the town. Besides, the law confirms *estates* only, and not rights of passage to the public. On a minute examination of all its parts, this is too clear for reasonable controversy.

It is claimed by the defendant, that twenty-eight years' enclosure of a part of the highway, is, to the land thus enclosed, presumptive evidence of a grant from the state; and as the highway contracted, that his title, so far as respects the residue,

extended to the centre.   I cannot admit, that a grant is presumable on the ground assumed ; but a consideration of the question I waive, as being unnecessary.

At the time when the enclosure was first erected, the plaintiff had an estate in fee-simple to the then centre, which was eight rods from the front of his farm, and three rods westward of the locust trees.   The defendant thought fit to appropriate to himself, by a fence, all the highway, so far as he had title, and likewise a rod of the freehold, which was the property of the plaintiff.   The principle the defendant must support, is this, that the centre of the highway, under all circumstances, is the line of demarcation between him and the tenant on the opposite side.   This principle is too unjust to be admitted, unless established law most clearly supports it.

It is a general rule of the common law, that the fee of the land over which a highway passes, is owned equally by the owners of the adjoining ground.   *Stiles* & al. v. *Curtis,* 4 *Day* 328.   *Peck* v. *Smith,* 1 *Conn. Rep.* 103.   This rule, however, is not artificial, and of positive institution, but is founded on the presumption, in absence of proof, that the highway was originally granted, by the adjoining proprietors, over their land, in equal proportion.   This is not a *presumptio juris et de jure,* but a reasonable presumption, based on probability.   Where it appears, however, that the highway was laid wholly over the land of one person, the presumption is annulled ; and to hold, by inference, against fact, that the fee of one person should be extended beyond his land, and of the other restrained to narrower limits, because he had been paid for a right of passage over a part of his soil, would be a most inequitable fiction, in opposition to the established maxim, that *in fictione juris semper existit æquitas.*   I can conceive of no principle of policy or general convenience, that countenances so wanton a sacrifice of private justice.

In the before cited cases of *Peck* v. *Smith, p.* 127. it was said by *Edmond,* J., that to any one general rule that can be adopted in relation to highways, there must be exceptions ; and with the same learned judge I fully concur in the following observations : " *A.* owns a piece of land ; a highway is laid across the middle of it ; the fee remains in *A.*   Again, *A.* and *B.* own land adjoining ; *a highway is laid wholly on A.'s land,* but bounding on the land of *B*   Here, *it is clear, the fee of the way remains in A., as much as in the first case ;* for laying a servitude on the land of *A.,* cannot transfer any part of the fee to *B.,* al-

though, by laying out the road, *B.* has become an adjoining proprietor. Take one case more : *A.* owns land ; *B.* owns land adjoining on each side of it ; the whole of the land of *A.* is laid out for a road. Will it be said, in such case, that the fee is transferred from *A.* to *B.* ? I think it cannot be said with reason, because proof of such a set of facts in respect to the laying-out of the road, and the circumstances of ownership continuing the same, as at the time of the laying-out, rebuts and oversets entirely the presumption, that the road was originally laid on *B.'s* land, or the land of those under whom he claims." To the same effect was the opinion of the late Ch. J. *Swift*, delivered in the before-mentioned case.

Upon the application of the preceding principle, it is undeniable, that the defendant did not extend his estate under the highway, by enclosing the moiety of it contiguous to his own land, and disseising the plaintiff of a part of his freehold. The disseisin, in this, as in other cases, must be construed strictly, and the right of the disseisor be limited, by his actual occupation. *The Proprietors of the Kennebeck Purchase* v. *Springer, 4 Mass. Rep.* 416.

In result, I am satisfied, that the cutting of the trees in question, was an unwarrantable trespass, which in no manner has been justified ; and that there ought not to be a new trial.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.