C. W. NEIL ET AL. v. INDEPENDENT REALTY COMPANY, Appellant.—298 S. W. 363.

Division One, September 16, 1927.

**1. VACATED STREET: Reversion to Original Owner.** The terrace or street or alley, being entirely a part of the lots of the dedicator, upon its vacation, reverts to the dedicator, or to his successor in title to the lots.

**2. ———: ———: To Middle of Street: Common Law and Equitable Rule.** The common-law rule that adjoining owners each hold title to the center of the road or street is founded upon the presumption or assumption that each had contributed equally to the street or road. It was not a hard-and-fast rule, but the presumption could be rebutted by the facts, and it has

no application where the entire street or road was dedicated to public use by one of the adjoining owners out of his own land, and was afterwards vacated by lawful authority. To permit the fee of one adjoining owner, who contributed no land to the easement, to be extended to the middle of the street, and to permit him, upon its vacation, to claim title to the half of the street which never was a part of his lots, would be inequitable; and in such case the whole street, upon its vacation by lawful authority, reverts to the dedicator who owned the lots of which only it was a part, or to his successor in title.

3. STATUTORY DEDICATION: Easement: Fee. Under common-law dedication of land to public use the public acquired a mere easement, that is, the right to use the surface, or so much under the surface as is necessary for a complete enjoyment of the easement, but not the fee to a highway. But the effect of a statutory dedication depends on the language of the statute, and the fee of the soil passes to the public, to the proprietors of adjacent lots, or remains in the grantor, as the language of the statute warrants the one or the other construction. The Legislature, by statutes relating to cities, can require the owners of additions thereto who dedicate streets, alleys or other public ways to the public, to grant the whole absolute fee, surface and under-surface, to the municipality, or to grant the absolute title to the municipality for public use only, and if only the use is granted the title or fee reverts when the use ceases.

4. ——: Prospective Operation. The effect of a statutory dedication to public use—whether the effect is to vest the fee in the municipality, or to grant only an easement or use to the public, or only the surface, or the under-service—is to be determined by the law in force at the time the dedication was made.

5. ——: Fee: Vacated Street: Title to Center Line. The statute (Sec. 9287, R. S. 1919) declaring that recorded plats or maps shall be a sufficient conveyance "to vest the fee of such parcels of land" as are therein described for public uses, "in such city, in trust and for the uses therein named, expressed or intended, and for no other use or purpose," did not vest in the city the fee of a parcel designated for a street; and if the street is vacated, the city cannot use the parcel for other purposes; nor can the city at the time of vacating the street vest the fee in an adjoining owner who before the dedication had no title to the parcel. Nor did the Charter of Kansas City, when rightly construed, attempt to vest title to the center line of the vacated street in an owner of adjacent lots who prior to the dedication had no title to any part of the parcel.

6. ——: Use of Word Fee. The use of the word "fee" in the statute (Sec. 9287, R. S. 1919) declaring that the recorded plat shall be a sufficient conveyance "to vest the fee of such parcels of land" as are therein described for public uses "in such city" was unfortunate, but the word is limited to an easement by the succeeding words declaring that the fee is vested in the city "in trust and for the uses therein named, expressed or intended, and for no other use or purpose." The statutory plat does not vest the fee-simple interest in the city, but creates only an easement, and when the street or alley is vacated the city has no title or interest, but the land, divested of the easement, reverts to the original owner, or his grantees.

7. ——: Fee to Center of Street: Statutes and Charter: Reversion. The pertinent statutes and charter provisions, and the decisions, are reviewed, and it is Held, that, upon the vacation of a parcel of land, previously dedicated by statutory dedication to a public street and owned by the dedicator alone, the fee reverted to the dedicator or his successor in title, and that the owner of adjacent lots on the opposite side of the vacated street is not entitled, either under the statutes or the charter or at common law, to claim to the center of the vacated parcel. [Overruling Thomas v. Hunt, 134 Mo. 392.]

8. ———: ———: ———: **Gift by City: Invalid Statute and Charter: In Pari Materia.** The statute (Sec. 8615, R. S. 1919) and the Charter of Kansas City of 1908 following the statute, say that a street, when vacated, must be equally divided between the respective owners of the lots on opposite sides of the street, irrespective of the fact that the whole parcel embraced in the street belonged to the dedicator at the time the parcel was dedicated for public use; but if such construction is placed upon them, both would be brought into conflict with the Constitution (Sec. 20, Art. 2) which says that "no private property can be taken for private use, with or without compensation, unless by consent of the owner," etc.; for, to give to a private person one-half of a street which he never owned, would be to take private property and devote it to a private use, without the consent of the owner and without compensation. The city cannot give something it never owned; it cannot give to an owner of abutting lots, who never owned a fee or any interest in the parcel embraced in the vacated street, the title to the center line of the street. But said statute and charter provision are **in pari materia** with and must be construed in connection with Section 9287, Revised Statutes 1919, which does not vest the fee in the city, but makes a statutory dedication the creation of a public easement in the street, and nothing more, and requires the parcel embraced in the street to revert to the owner when the easement ceases, and can be reconciled with it by restricting their application to harmonize with that section, and if that is done they are not unconstitutional.

---

Corpus Juris-Cyc. References: **Boundaries,** 9 C. J., Section 303, p. 272, n. 20. **Constitutional Law,** 12 C. J., Section 220, p. 787, n. 96. **Dedication,** 18 C. J., Section 129, p. 110, n. 22; Section 130, p. 111, n. 28, 29; p. 112, n. 35. **Highways,** 29 C. J., Section 257, p. 541, n. 79; Section 258, p. 542, n. 92. **Municipal Corporations,** 44 C. J., Section 3669, p. 918, n. 54. **Statutes,** 36 Cyc., p. 1147, n. 30.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

AFFIRMED.

*German, Hall & German* for appellant.

(1) When a street or alley has been dedicated to the city for public use by recorded plat, the fee-simple title thereto vests in the city. Sec. 9287, R. S. 1919; Thomas v. Hunt, 134 Mo. 403; Hatton v. St. Louis, 264 Mo. 634; Union Elevator Co. v. Ry. Co., 135 Mo. 353; Grand v. Moon, 128 Mo. 43; Charter and Revised Ordinance of Kansas City 1909, p. 357, sec. 4. (2) Where the entire street is dedicated by one proprietor and is later vacated by ordinance, the rule of law is not changed, but the title to the street so vacated passes to the abutting property owners to the center of the street. Thomas v. Hunt, 134 Mo. 392; Hatton v. St. Louis, 264 Mo. 634; City of Ladonia v. Day, 265 Mo. 383; Sec. 8615, R. S. 1919; Charter and Revised Ordinance of Kansas City 1909, p. 357, sec. 4; Clark v. McAtee, 227 Mo. 152.

*Halbert H. McCluer* for respondent.

(1)   A dedication of a street is a sufficient conveyance to vest the fee in the city, but in trust only for the uses therein named, and no other purpose.   Sec. 9287, R. S. 1919; Snoddy v. Bolen, 122 Mo. 491.   (2)   When the entire street is dedicated by one party and is vacated, the title reverts to him.   Authorities supra; Healy v. Babbitt, 14 R. I. 533; In re Robbins, 34 Minn. 99; Taylor v. Armstrong, 24 Ark. 102; Zinc Co. v. LaSalle, 117 Ill. 411.

GRAVES, P. J.—Action to determine title to the following tract of land in Kansas City, viz:   "A strip of land twelve and one-half feet in width, being south twelve and one-half feet of land of the following lots: Lots Eight, Twenty-one and Twenty-two (Nos. 8, 21, 22), in Mayfield, an addition to Kansas City, Missouri."

The petition is the ordinary petition to ascertain and determine title.   We give the particular description of the land, because of the peculiar state of the record.

Defendant, after admitting its corporate capacity, admitted that "it claims some title, estate or interest in and to the premises described in plaintiff's petition," and avers that it "claims to be the owner thereof and to have _all_ the title, estate and interest therein."   Further answering it denied each and every other allegation of plaintiff's petition, and prayed to be discharged with costs.

The case was tried before the court, without a jury, upon an agreed statement of facts.

Not that it is material now, but the record so shows, and we give it as a fact in the case history, that at the first hearing the trial court found for defendant, but at a second hearing and trial (upon the same facts) the trial court found for plaintiffs and decreed title in them.   From this judgment defendant brings the case here.

The agreed statement of facts is of some length, and apparently is made up largely of excerpts from an abstract of title.   Counsel on both sides say that there is but a single question involved in the case, and the necessary facts can be shortly stated.   An important agreed fact is thus stated: "The common source of title of plaintiffs and defendant is William B. Clarke, who died owning the property subsequently acquired by both plaintiffs and defendant.   Upon his death the title vested in his widow, Kate Rockwell Clarke, who for the purposes of this suit may be regarded as the common source of title."

July 20, 1904, the said Clarke and wife filed a plat of Marlborough Heights, which is fairly represented by the following:

N

Note the boundary streets, i. e. 71st Street on the north, 72d Street on the south, Prospect Avenue on the east, and Olive Street on the west. There was no street between the north and south halves of the platted area.

On September 1, 1908, Kate Rockwell Clarke deeded lots 1 to 4, both inclusive (north half of the platted area) to Allen D. Bonnifield, and April 14, 1909, she deeded lots 5 to 8, inclusive (south half of the platted area) to Wm. J. Phelps. After these deeds the north and south halves of Marlborough Heights took separate courses so far as title is concerned. They have never been owned thereafter by the same party or parties. Plaintiffs claim under the Bonnifield title to north half of the platted area of Marlborough Heights, and the defendant through the Phelps title to the south half, and other things, which we will note later.

On March 30, 1909, Frederick H. Wood, a successor in title of Bonnifield, filed a plat of Marlborough Slope, described as a resurvey of Lots 1, 2, 3 and 4 of Marlborough Heights, which plat contains the following provisions: "The streets and avenues as represented in this plat are hereby dedicated to public use forever," and such plat (without the lot sub-divisions therein and thereof) is fairly represented by the following:

N

71st St.

Olive St.

Wabash Ave.

Prospect Ave.

W                                                                    E

71st. St. Terrace.

S

The twenty-five feet in 71st Street Terrace was the south twenty-five feet of the north half of the original platted area of Marlborough Heights. It passed by deed to Bonnifield and thence by mesne conveyances to Wood, who had it resurveyed and platted as Marlborough Slope. This strip of twenty-five feet never was a part of the south half of Marlborough Heights.

Later, 71st Street Terrace was vacated by the city of Kansas City, through whose efforts we think immaterial, although the record shows. Defendant is the successor in title to the south half of the platted area of old Marlborough Heights, which original deed to Phelps conveyed the land to the south line of what afterward became 71st Street Terrace. So, of course, the land now owned by defendant adjoined the south line of 71st Street Terrace—when such street existed, and before its vacation. Marlborough Slope afterward became Mayfield, the plat of Mayfield, among other things, saying: ''This is a resurvey of Marlborough Slope and *vacated 71st Street Terrace* from Olive Street to Prospect Avenue in Kansas City, Missouri, reference being had to said plat on file in the office of the Recorder of Deeds for Jackson County, Missouri.'' This plat of Mayfield therefore covered the original north half of Marlborough Heights, as deeded by Mrs. Clarke to Allen D. Bonnifield, and no more.

The contention of the defendant is, that by virtue of the plat of Marlborough Slope (showing the public street of 71st Street Terrace) and by reason of the later vacation of such street, it, as an adjoining owner of lots, became entitled to the south one-half of the

twenty-five feet in the street so vacated. So far as we see this is the real point in issue. Respondents contend contra.

I. Recalling that all of 71st Street Terrace was, at the date of dedication, a part of the land belonging to the dedicator and the initial grantor in plaintiffs' line of record title, a fair and equitable rule would seem to be, that upon its vacation the whole title would revert to plaintiffs, as successors in title. For this rule there is much reason and much authority.

**Common-Law Rule: Title to Center Line.**

The general rule as announced by the common law was that the adjoining owners each held title to the center of the road or street, but this was founded upon the presumption or assumption that the parties had each contributed equally to the street or highway. This was not a hard-and-fast rule, but the presumption could be rebutted by the facts. An illustrative and leading case is Watrous v. Southworth, 5 Conn. l. c. 310 (star page), whereat it is said:

"It is a general rule of the common law, that the fee of the land over which a highway passes, is owned equally by the owners of the adjoining ground. [Stiles v. Curtis, 4 Day, 328; Peck v. Smith, 1 Conn. 103 (a).] This rule, however, is not artificial, and of positive institution, but is founded on the presumption, in absence of proof, that the highway was originally granted, by the adjoining proprietors, over their land, in equal proportion. This is not a *presumptio juris et de jure*, but a reasonable presumption, based on probability. Where it appears, however, that the highway was laid wholly over the land of one person, the presumption is annulled; and to hold, by inference, against fact, that the fee of one person should be extended beyond his land, and of the other restrained to narrower limits, because he had been paid for a right of passage over a part of his soil, would be a most inequitable fiction, in opposition to the established maxim, that in *fictione juris semper existit equitas.* I can conceive of no principle of policy or general convenience, that countenances so wanton a sacrifice of private justice.

"In the before cited case of Peck v. Smith, p. 127, it was said, by EDMOND, J., that to any general rule that can be adopted in relation to highways, there must be exceptions; and with the same learned judge I fully concur in the following observations: 'A owns a piece of land; a highway is laid across the middle⁻ of it; the fee remains in A. Again, A and B own land adjoining; *a highway is laid wholly on A's land,* but bounding on the land of B. *Here, it is clear, the fee of the way remains in A, as much as in the first case;* for laying a servitude on the land of A cannot transfer any part of the fee to B, although, by laying out the road, B has become an adjoining proprietor. Take one case more: A owns land; B owns land

adjoining on each side of it; the whole of the land of A is laid out for a road. Will it be said, in such case, that the fee is transferred from A to B? I think it cannot be said with reason, because proof of such a set of facts in respect to the laying out of the road, and the circumstances of ownership continuing the same, as at the time of the laying out, rebuts and oversets entirely the presumption that the road was originally laid on B's land, or the land of those under whom he claims.' To the same effect was the opinion of the late Chief Justice SWIFT, delivered in the before mentioned case.''

The case of Watrous v. Southworth, supra, is cited with approval by CHURCH, C. J., in Read v. Leeds, 19 Conn. l. c. 187.

In Healey v. Babbitt, 14 R. I. l. c. 534, it is said: "In Hughes v. Providence & Worcester Railroad Company, 2 R. I. 512, this court laid down the rule governing the construction of deeds in cases of lands bounded on highways in the following language, namely: 'This court have repeatedly ruled, and it may now be considered the settled policy of the State, that where a deed bounds the grantee to, by, or on, a highway . . . the presumption of law is, that the grantee takes the fee of the soil to the center of the highway . . . if the grantor, at the time, owned the fee to the center subject to the right of the public in the easement; unless there be established monuments, or other clear description in the deed, to rebut this presumption, and show that the intention was to limit the grant to the line of the highway.' . . . And see, also, Tingley Brothers v. City of Providence, 8 R. I. 506. That such is the general rule of law, see the discussion and cases collected in the note to Dovaston v. Payne, 2 Smith's Lead. Cas. 216; Tyler's Law of Boundaries, pp. 103-114; Cox v. Louisville Railroad Co., 48 Ind. 178-185, 188; Jarstadt v. Morgan, 48 Wis. 249; Tousley v. Galena Mining Co., 24 Kan. 331-333. This presumption, however, that the grantee takes the fee of the soil to the center of the highway, is not absolute and conclusive. It is created, or rather allowed, in the absence of proof, and is based upon the idea that when the street or highway was laid out, the proprietors upon each side contributed their land for the purpose, in equal portions. When it appears that such was not the fact, the presumption does not arise.'' The court then cites, approves and quotes from Watrous v. Southworth, supra.

Along the same general line is the case of In re Robbins, 34 Minn. l. c. 101, whereat it is said: "The question here presented is whether, where a street or alley is laid wholly on one's own land, and is located on the margin of his tract, so that he owns nothing beyond (the adjoining proprietor having no interest in the fee of such street or alley), the whole of the street opposite a lot designated as such in a deed, and bounded on the street, passes to a grantee of the original proprietor? Where, by the terms of a deed, the land conveyed is

bounded by a street or highway, the grantee takes presumptively *ad filum viae* as the natural boundary line between opposite proprietors; the reason of the rule being that the adjoining owners are presumed to have originally furnished the land in equal proportions for the sole purpose of a highway. [Dunham v. Williams, 37 N. Y. 251; Stiles v. Curtis, 4 Day, 328; Woolrych on Ways, 5.] So a deed of lots conveyed as represented in a town plat, is presumed to include a grant of the soil to the center of the street, and it passes as parcel of the land and not as an appurtenant. [Bissell v. Now York Central Ry. Co., 23 N. Y. 61.] This presumption, however, yields when a different intention is clearly manifested, or which the evidence shows there could be no foundation for it, as where the grantor at the time owned no part of the street, the same being laid wholly on the land of another. [Dunham v. Williams, supra; King's Co. Ins. Co. v. Stevens, 87 N. Y. 294; 3 Kent, Comm., 434; Champlin v. Pendleton, 13 Conn. 23; Watrous v. Southworth, 5 Conn. 305; Peck v. Smith, 1 Conn. 146.] In arriving at a proper construction of the effect of a deed granting lots bounded on a street, and the intention of the parties thereto in respect to the extent of the grant in the street, regard must be had to the situation of the lots and streets and the state of the title, as well as the language of the deed. 'This is the recognized rule of interpretation, and it is a question of interpretation and intent.' [Mott v. Mott, 68 N. Y. 253; Bliss v. Johnson, 73 N. Y. 529; Webber v. Eastern Railroad Co., 2 Met. 147.]''

Another early leading case, discussing the common-law rule, is Taylor v. Armstrong, 24 Ark. 1. c. 107, whereat it is said:

''If a highway be laid out through the land of A, and he afterwards conveys the land, upon one side of the highway to B, and the land upon the other to C, without reservation, they become the owners of the fee in the soil of the highway equally, each owning to the center.

''So if A and B, being the proprietors of adjoining tracts of land, contribute equal quantities of land to a highway, and afterwards convey their lands respectively, their grantees become the owners of the fee in the soil of the highway equally, each going to the center.

''But if a highway be laid off entirely upon the land of A, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee. [Watrous v. Southworth, 5 Conn. 305; Chatham v. Brainerd, 11 Ib. 60; Champlin v. Pendleton, 13 Ib. 23; Read v. Leeds, 19 Ib. 187.]

''The same rules are applicable to streets in towns and cities. [Hammond v. McLachlan, 1 Sanford, 323; Pearsall v. Post, 22 Wend. 126; Mayor and Council of Macon v. Franklin, 12 Geo. 245; Trustees of Watertown v. Cowen, 34 Paige, 513; State v. Mayor, Mobile, 5

Porter, 309; Aug. on High., 293-303; O'Linda v. Lothrop, 21 Pick. 295; Barclay v. Howell's Lessee, 6 Peters, 499; New Orleans v. United States, 10 Ib. 633; Dovaston v. Payne, 2 Smith's Lead. Cas., 218, and cases cited.]''

The foregoing follows an extensive quotation from Kent on the law as to public highways, which quotation is well worth reading.

So, it appears that the common-law rule to the effect that adjoining owners had title to the middle of the highway, rested upon the presumption that they had contributed equally to the road, but if the facts showed the contrary, the rule did not apply. In other words, the facts would govern rather than the mere presumption. Out of this grew the rule that if the highway is taken wholly from one man's property, and such highway is vacated, the land in fee reverts to the original owner, or his grantees, freed from the public use or easement.

II. Statutory provisions, as to the dedication, may materially affect the common-law rule. Under a common-law dedication the public acquired a mere easement. By such dedication the public had the use of the surface for a highway, and so much below **Statutory** the surface as was necessary for a complete enjoyment **Dedication.** of the easement. The fee to the highway (in the full sense of the term fee) was not vested in the public. See long list of cases cited under reference 8 to Section 106 of 13 Ruling Case Law, pages 116 and 117. The text of Section 106 we give, infra.

In a note to the early case of State v. Trask, 27 Am. Dec. 1. c. 559, it is said: ''A dedication may be either statutory or according to the common law. The former arises where a person complies fully with the provisions of statutes enacting that certain formalities, when observed, operate as a dedication of lands to the public. Such dedication usually is made by recording a map or plat in a public office, acknowledged and executed in the manner prescribed. [Downer v. St. Paul Railroad, 23 Minn. 271; 2 Dill. on Mun. Corp., sec. 491; Railroad Company v. Schurmeier, 7 Wall. 272; City of Des Moines v. Hall, 24 Iowa, 234; Ragan v. McCoy, 29 Mo. 356; Detroit v. Railroad Co., 23 Mich. 173; Mansur v. Haughey, 60 Ind. 364.] The effect of statutory dedications is generally indicated by the statute itself, and the fee of the soil passes to the public, to the proprietors of adjacent lots, or remains in the grantor, as the language employed warrants the one or the other construction. [Cox v. Railroad Co., 48 Ind. 178; Ragan v. McCoy, 29 Mo. 356; Randal v. Elder, 12 Kan. 257; City of Des Moines v. Hall, 24 Iowa, 234.] Common-law and statutory dedications are different in that the former operates by estoppel *in pais*, while the latter operates by grant. [Denver v. Clements, 3 Col. 472; 2 Dillon, Mun. Corp., sec. 491.] But an incomplete statutory dedication may become one at common law by an

acceptance and appropriation by the public. [Fulton v. Mehrenfeld, 8 Ohio St. 440.]''

In 13 Ruling Case Law, Section 106, page 116, it is said: ''The right acquired by the public in respect of land devoted to highway purposes is ordinarily a mere easement of passage over it, with the powers and privileges incident thereto, the fee title remaining as it was before the highway was established.'' Under this the annotator cites the following Missouri cases, along with a mass of the other cases from other jurisdictions, i. e. State v. Culver, 65 Mo. 607; Julia Building Assn. v. Bell Tel. Co., 88 Mo. 258; Thomas v. Hunt, 134 Mo. 392; Cartwright v. Liberty Tel. Co., 205 Mo. 125.

In the same section on page 117 of 13 Ruling Case Law it is further said: ''The ownership of the fee depends, therefore, on the ownership of the land at the time the highway was established and on subsequent conveyances thereof. When a highway is laid out over a tract of land the owner and his successors in title continue to own the fee, including the strip taken for the highway, whether it runs through the middle or along the side of the tract so that one side of the highway is the boundary line of the adjoining tract. But when a person who owns lands on both sides of a highway conveys the part on one side, the boundary is ordinarily the middle line of the road, though it is entirely a question of intention. At the present time it is always presumed, when lands of different owners abut on opposite sides of a highway, that the middle of the highway is the boundary.''

The foregoing is modified by what immediately follows on page 119 of 13 Ruling Case Law, supra, thus: ''But it is competent for the Legislature to provide for the taking of the fee and the divesting of the owner of the land of all proprietary interest therein, and this has often been done in the case of streets in cities and villages, the fee being vested in the corporation, the fee simple in the counties in which the corporation is situated, or in the State. The effect of statutory dedications is generally indicated by the statute itself, and the fee of the soil passes to the public, to the proprietors of adjacent lots, or remains in the grantor, as the language employed warrants the one or the other construction. In some jurisdictions the fee to city or village streets is in the municipality where they have been acquired through a valid statutory dedication, but is in the abutting owners where there has been a common-law dedication only, or where the street was acquired by means of condemnation proceedings, or by common user.''

We have no doubt that the Legislature can, by laws as to platting towns, or additions thereto, require the person or persons, dedicating the streets, alleys, ways and highways to the public, to grant the whole absolute fee (surface and below the surface) to the municipality. Or,

such lawmaking power could compel the granting of the absolute title to the municipality for the public use only, and when such use ceased the title would revert. Or, the lawmakers could compel (as at common law) the mere grant of an easement, which easement would apply to the surface of the land, and so far below the surface as was required to make effective the surface easement for a fully equipped street or highway. The latter two are in effect the same. As cities require sewers and other things not required of a mere public road, more under-surface ground would be required to make a useful highway, or street, and thus the rule as between county and city (as to the *quantum* of easement) is a mere matter of degrees. The principle is the same. So too as to the surface. The city requires space for telephone and light poles and like things, and the degree of the user is greater than in a country road, but the principle is the same. So, to determine the law of the particular case, we must go to the State statutes, in force at the time of the statutory dedication. For this reason we find diverse rulings in the different States, and even in the same State, where there have been (at different periods) different statutes. In this case we shall discuss our rulings in the light of the statutes existing at the date the dedication was made. The applicability of rulings from other States will likewise be determined by the consideration of our statutes, along with the statutes from the other States, if such become necessary.

The dedication of Marlborough Slope by Frederick J. Wood was on March 30, 1909. Our case law will be discussed with reference to the effective statutes at that date.

III. In 1909, the year of the dedication involved here, we had two statutes and some charter provisions in force affecting the dedication. These, we mean, may possibly affect the dedica-

**Governing Statutes.** tion. The statutes are Sections 8615 and 9287, Revised Statutes 1919. The charter provisions are Sections 1, 2, 3 and 4 of Article IX, pages 355 to 357, and Section 6 of Article X, page 363, of Charter of Kansas City for 1909. This charter was in fact adopted in 1908, but annotated, printed and published in 1909. Kansas City had constitutional authority to adopt a charter covering its local government and concerns. So these charter provisions really take the place of Section 8615, Revised Statutes 1919, which was Section 9503, Revised Statutes 1909. It is one of the general provisions of the law governing municipal corporations, and provides in case a street or alley is vacated, that "the same shall be attached to the ground bordering on such street or alley, and all title thereto shall vest in the persons owning the property on each side thereof in equal proportions, according to the length or breadth of such ground, as the same may border on such street or alley."

Section 4 of the charter provisions reads: "The property or part thereof so vacated, if it be a lot or public square, shall belong to the persons or corporations who may have the title thereof according to law; and if same be a public highway, street, avenue, or alley, the same shall vest in the persons or corporations owning the property on each side thereof in equal proportions according to the length or breadth of such land as the same may border thereon and as the titles to such bordering lands may be held by the said owners thereof respectively."

Preceding sections vest control of streets, alleys, etc., in the city council, as well as control of vacating the same. As to vacation and the title after vacation, the charter and statute provisions are practically the same.

Section 9287 of Revised Statutes 1919 (Sec. 10294, R. S. 1909) is in the chapter pertaining to city plats. The previous sections provide for the making, acknowledging and recording of plats of cities, towns and villages, as well as of additions thereto. Then the important part of Section 9287, Revised Statutes 1919, says: "Such maps or plats of such cities, towns, villages and additions made, acknowledged, certified and recorded, shall be a sufficient conveyance to vest *the fee of such parcels of land as are therein named,* described or intended for public uses *in such city, town or village,* when incorporated, *in trust and for the uses therein named, expressed or intended, and for no other use or purpose.* If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, and none other."

In statutory dedications this describes the title which the dedicator is required to convey. He is required to convey the fee in such parcels of land to the corporation, *"in trust and for the uses therein named, expressed or intended,* AND FOR NO OTHER USE OR PURPOSE." If the use named be that of a street, then its use is confined to a street. The city can use it for no other purpose. The city has only a restricted right in the land. To our mind the use of the word "fee" in the statute, while unfortunate, is not harmful in the instant case, because the word "fee" is clearly limited by the clause, supra, *"in trust and for the uses therein named, expressed or intended, and for no other use or purpose."* In other words it is not a conveyance in fee simple of the title, but a conveyance *in trust* for purposes named, *and for no other use or purpose.* This may be more than a common-law dedication (which matter we discuss later) but not a grant in fee simple. The city could not vacate the street, and then use the land for its own purposes. Such is the title passing from the dedicator. Now can the city vacate the street, and per the force of such act of vacation, give an absolute unrestricted fee simple to the land

to an adjoining owner, who theretofore never had title thereto? In other words, give to him a title which the dedicator never conveyed, and which the city never owned? Right here comes in what looks, at first blush, like a conflict with the city charter and the statute. And, if the same situation had arisen in a city or town not having a special charter, would come in what looks, at first blush, like conflict between Sections 9287 and 8615, Revised Statutes 1919. Of these questions, along with the Missouri cases, in paragraphs infra. We omitted to say what Section 6 of Article X of the Kansas City Charter provides. It refers to platting additions to the city, and says: "Plats and maps of additions to the city or of subdivisions of land in the city, shall be made according to the general law of the State in force at the time."

There are other requirements in behalf of the city, but so far as the title to be conveyed is concerned, the charter leaves it to the existing state law. So what we really have to consider is Section 9287, Revised Statutes 1919, and Section 4 of Article IX of the City Charter.

IV. Respondent relies upon the case of Snoddy v. Bolen, 122 Mo. 479. The majority opinion in this case says much which accords with what we have said under out Point I, as to the common-law rule. There is a dissenting opinion in Snoddy's case, but **Snoddy and** both opinions agree that the dedication is by deed, **Thomas Cases.** and is not a statutory dedication. In this, that case differs from the one at bar. So that if there is a difference between that case, and a case wherein we have a statutory dedication by plat filed as directed by statute, it may be of but little value as an authority in the instant case. In the instant case we have a statutory dedication. As to whether our statute goes further than the common law we discuss later.

The leading case relied upon by the appellant is the case of Thomas v. Hunt, 134 Mo. 392. This is a case in Division One, while the Snoddy case, supra, is by Court en Banc. In Snoddy's case (opinion by BLACK, C. J.), BARCLAY, J., did not sit, and BRACE and MAC-FARLANE, JJ., dissented. BLACK, J., was succeeded by ROBINSON, J., and the Thomas v. Hunt case was decided in Division One by MAC-FARLANE (who wrote the opinion), BARCLAY, BRACE and ROBINSON, JJ.

But the case of Thomas v. Hunt, supra, is a statutory dedication, and like the case at bar, the street vacated was wholly from the land of the dedicators. In that case it is said: "But it is claimed by defendants that inasmuch as Tracy Avenue was the limit of Ranson and Tally's Addition on the east, the title to the entire street remained in the original proprietors of the adjacent lots, and their grantees, and the east half of the street did not pass by virtue of the plat to the owners of the land on the east side which now constitutes lot 1."

It will be observed that the Thomas case was dealing with a situation just like that in the case at bar, and Division One ruled that the defendants were entitled to the east half of Tracy Avenue. BLACK, C. J., in Snoddy v. Bolen, 122 Mo. 1. c. 485, had said: "In some cases the rule that the center of the street is to be taken as the boundary will be extended so as to include the whole street, as where one lays out a street entirely on his own land and on one side thereof, so that the boundary of the land and the boundary of the street coincide. [Healey v. Babbitt, 14 R. I. 533; In re Robbins, 34 Minn. 99; Taylor v. Armstrong, 24 Ark. 102.] Such is the case now in hand."

Again at page 491 of 122 Mo., BLACK, C. J., had said: "Our statute in force when Hough and Furnas executed the deed to the county provides that such maps and plats, made, acknowledged, certified and recorded as provided, 'shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town, or village, when incorporated, in trust and for the uses therein named, express or intended, *and for no other use or purpose.* If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid, shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, *and no other.*' [G. S. 1865, sec. 8, p. 248.] Whilst this statute vests the fee in the streets in the city, town, village or county, still it is held in trust for street purposes and for no other use or purpose. Every other beneficial use is in the lot owners, and this interest of the lot owner will pass by a conveyance of the lot. No other deduction can be made from the cases heretofore decided by this court. [Hannibal Bridge Co. v. Schaubacher, 57 Mo. 584; Price v. Thompson, 48 Mo. 361; Ferrenbach v. Turner, 86 Mo. 416, and cases cited.] But it is unnecessary to pursue the inquiry, because the dedication in question was not a statutory one, and because it is conceded on both sides of this contest that Furnas owned the minerals in the streets and alleys; and we have before seen that his title to the minerals in the streets and alleys passed as part and parcel of the grant to O'Keefe."

The first quotation, supra, amounts to nothing more than a statement of a common-law rule, as held by the cited cases therein, and many others. It was a fact in Snoddy's case that the east line of Allen Street was also the east line of the addition, but it could be said the case rode off upon the effect of a conveyance by deed of trust to O'Keefe. But both questions were discussed, and Division One concedes that Judge BLACK ruled the question, for in Thomas v. Hunt, 134 Mo. 1. c. 402, MACFARLANE, J., says: "But it is held that if the street is the limit of the dedicator's title, a conveyance of an abutting lot will carry the fee in the street to the opposite boundary, thereof. [Snoddy v. Bolen, supra, 485, and cases cited.]"

The opinion then attempts to distinguish the Thomas case, from cases falling within the common-law rule, and speaks of our statute. We say "attempts" advisedly. We concede that statutes upon dedication may, and in some states they do, go much further than the common law, in the *quantum* of the grant to the city. As we have said the fee-simple title absolute might have to be given to the city to the land covered by streets and alleys by the dedicator, if the statute so said, and the dedicator accepted and made a statutory dedication. But this is adrift, because our statute (Sec. 9287, R. S. 1919) does not require the dedicator to grant to the city an absolute fee-simple title to the ground to be used for streets and alleys. So this case must be discussed in the light of our own law, and this we shall do. We close this point by saying that the Thomas case, supra, concedes that our Court en Banc in the Snoddy case, supra, ruled that when the street vacated was on the line of the addition, and was taken wholly from the dedicator's land, there would, in case of vacation, be a reverter of the whole street to the dedicator or his grantees.

V. Our statute, Section 9287, Revised Statutes 1919, which prescribes the *quantum* of interest the city takes in the land dedicated has not been uniformly construed. It has been on the books at least since 1835, Revised Statutes 1835, page 599, **Further Review of Decisions.** secs. 3, 4 and 5. Many of our cases rule that it creates a mere easement, in the city. Thus in Thomas v. Hunt, 134 Mo. supra, l. c. 402, 403, it is said:

"Under this statute it has been held that the fee passes from the owner by the dedication. [Hannibal v. Draper, 15 Mo. 634; Reid v. Board of Education, 73 Mo. 304.]

"It has also been held that the fee held by the city was subject to the trusts contained therein or intended thereby, from which it could not be diverted. [Belcher Co. v. St. Louis Co., 82 Mo. 121; Ferrenbach v. Turner, 86 Mo. 419.]

"Considering the policy of the law, as before stated, to be that the owners of property abutting on a street own the fee also to the center of the street, subject to the easement, it is clear to us that the statute was intended to effect the same purpose; that is, while the fee passed out of the dedicator and vested in the county, the public only secured an easement, and the abutting owners, respectively, the beneficial right in the land to the center of the street. This seems to be the view taken in the Snoddy case, supra (491), though what is there said may be considered only *dicta.*

"We are therefore of the opinion that by the statutory dedication of Tracy Avenue the fee to the land passed out of the dedicators, and the ownership, subject to the easement, vested in the abutting owners respectively to the center of the street."

This is the common-law rule exactly, except it does not add that if the street was from one man's land solely, then he would get the whole by reverter upon a vacation of the street.

To like effect is Ferrenbach v. Turner, 86 Mo. l. c. 419, whereat BLACK, J., said: "It has been held, in this State, that a lot owner has a property right in the street. [Lackland v. North Mo. Ry. Co., 31 Mo. 180; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 584.] And this, too, though the dedication was by the way of a statutory plat. [Rutherford v. Taylor, 38 Mo. 315; Price v. Thompson, 48 Mo. 361; Thurston v. City of St. Joseph, 51 Mo. 512.] This case, though over-ruled in other respects, has not been in that under consideration."

The last line, supra, refers to Thurston v. St. Joseph, 51 Mo. 512. Thurston's case has been overruled upon another question, but not on the question of the city's interest in a street dedicated under the statute. To like effect are Rutherford v. Taylor, 38 Mo. 315; Price v. Thompson, 48 Mo. l. c. 365; Thurston v. St. Joseph, 51 Mo. l. c. 512; Union Elevator Co. v. Kansas City Ry. Co., 135 Mo. l. c. 366; Snoddy v. Bolen, 122 Mo. l. c. 491.

In Union Elevator Co. case, supra, 135 Mo. l. c. 366, it is said: "Coates and Hopkins Addition to the city was platted and the plat filed in the Recorder's office of said county on the seventh day of January, 1876. By it Henning and Hopkins streets were dedicated to the public, and the fee therein vested in the city for public purposes. [Sec. 8, p. 248, G. S. 1865.] By that statute it is not meant that an absolute fee in the streets is vested in the city with the right of disposal by deed, but simply the right of their control for the use of the public. Whatever may be the ruling in other jurisdictions under similar condition, the law as announced in this State is that the owner of land adjoining a street or alley owns the fee to the center of such street or alley, as the case may be, subject to an easement in the public. [Hannibal Bridge Co. v. Schaubacher, supra; Snoddy v. Bolen, 122 Mo. 479.]"

So too, in Cartwright v. Liberty Telephone Co., 205 Mo. l. c. 133, it is said: "According to the laws of this State, the property owners in cities, towns and villages own the land to the center of the adjoining street, subject to the easement of the city. It has the right to subject the street to any and all of the uses or purposes for which the street was acquired; but until it does so subject it to one or more of those uses, or so long as he and the city can jointly occupy and use the street without doing 'violence to the full, free and complete exercise of the public easement,' he is to that extent just as much the owner of the property to the center of the street as he is of the remainder of the lot, and has the same right to use it in any manner for any purpose he may see proper, not inconsistent with the rights of the public."

In the Thomas case, supra, 134 Mo. 1. c. 402, it is said that Hannibal v. Draper, 15 Mo. 634, and Reid v. Board of Education, 73 Mo. 304, rule that a fee passed. This is not true as to Hannibal v. Draper. Judge SCOTT there ruled that the fee passed to the county *for public purposes* under the Act of 1835, Revised Statutes 1835, page 599, secs. 3 to 5. This Act of 1835 is our Section 9287, and Judge SCOTT's ruling makes a mere easement.

In the Reid case, 73 Mo. 304, there was a plat filed and with it a deed, just as in Snoddy v. Bolen, supra, and hence no statutory dedication. The deed conveyed a fee. So too in Brown v. City of Carthage, 128 Mo. 1. c. 17, it is said: "A valid statutory dedication operates to *vest the fee* and dispenses with the necessity of an acceptance on the part of the public." Among others, the Reid case, supra, is cited. As stated above there was no statutory dedication in that case.

Buschmann v. City of St. Louis, 121 Mo. 523, is cited. This case has a statutory dedication, but it rules that where there is such a dedication no acceptance is required by the city, but it does not say a word about *vesting* a fee. [See 121 Mo. 1. c. 536.]

City of California v. Howard, 78 Mo. 88, is cited, and this case does say: "The Act of 1845, under which the plat was filed, vested the fee of all the lands dedicated to public use, in the county." But, Section 6 of the Act of 1845 (R. S. 1845, p. 1056) is as we have it now. It says that the plat when "made, acknowledged, certified, and deposited with the recorder, shall be a sufficient conveyance to *vest the fee* of such parcels of land as are therein expressed, named or intended, for public uses in the county in which such town, village, or addition is situate, *in trust and for the uses therein named, expressed or intended, and for no other use or purpose.*"

But, it appears that these few cases, as we have pointed out above, unfortunately say that these statutory plats, in statutory dedications, vest a fee. That they are wrong is clear from the reading of the statutes from 1835 on up, and from the other cases we cite and quote from in this paragraph. Our statutory plats do not vest a fee-simple interest in the city or county. These streets, alleys and other public grounds are held for the use of the public, and not otherwise. Such plats, in fact, create but an easement, and when vacated, the city has no title nor interest, but the land, divested of the easement, reverts to the original owner, or his grantees. The easement, or user, may be a little broader and deeper and more firmly fixed by the statute, than it was by the common law (we think not), but it is an easement nevertheless. The statutory method really only avoids acceptance by the city and proof thereof. But even if we called it a conveyance *in trust,* the result is the same. When the uses for which the trust is created cease, there is a reverter, as in case of an easement. From the

weight of authority we think our statute creates merely an easement, as by a common-law dedication.

But, it is said that by virtue of Section 8615, Revised Statutes 1919 (which has been upon our books since 1877, or perhaps, in a form, since 1866), and by virtue of the charter provisions of Kansas City, a street, when vacated, must be equally divided between the property owners of the respective opposite sides, of the street, irrespective of the fact that the whole street came from the property of only one man. The statute so says, and the Charter of Kansas City (following the statute) so says, but if the Charter provision (the law involved in this case) is to be construed to mean, in case the whole street is given by one man, and the owners of property on the other side contributed no part of the street, that upon vacation of the street, the owners of the property on the opposite side shall have one-half of the street in fee, then such charter provision cannot stand. The case of Thomas v. Hunt, 134 Mo. l. c. 402 and *403*, supra, says that this section (Sec. 8615, R. S. 1919) should be so construed out of consideration of public policy, as it also rules that Section 9287, Revised Statutes 1919, out of the same consideration, should be so construed. It is further said that this last-mentioned ruling was the view expressed by BLACK, C. J., in the Snoddy case, 122 Mo. l. c. 491, but Judge BLACK made no such ruling as to streets dedicated solely by one man. He ruled the contrary, and the Thomas case, supra, says that he ruled to the contrary. [See 134 Mo. l. c. 402, top of page.] Snoddy's case was in Court en Banc, and could not well be overruled by Thomas's case in Division. But to the real contention. Section 9287, Revised Statutes 1919, provides what title the dedicator shall convey to the city by his plat. That title is not a fee, but an easement. At most it is a conveyance in trust for a use. In either event there is a reverter in case of vacation. How can the city with only an easement, by act of vacation, give a fee-simple title to A, B and C owners of property on one side of the street, but who contributed no part of the street? How can the city give that which it never had? Section 9287, supra, provides that the property shall be used for a street, if dedicated for such, and *for no other purpose*. At common law the dedicator had a reverter as to the whole street, and this valuable right (property right in the land), and other rights, are taken and given to a private person for a private use, in violation of the Constitution. [Sec. 20, Art. II, Missouri Constitution 1875.] By this we mean that the city, through its charter, gives an absolute fee title to half the street to private parties.

The Constitution says: "That no private property can be taken for *private* use, *with* or *without* compensation, unless by *consent* of

*Charter Provision: Section 8615.*

*Private Property for Private Use.*

the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes.'' This is the public policy of the State as expressed in its organic law. No other public policy can change this constitutional declaration of a state public policy, the statement in Thomas v. Hunt, 134 Mo. l. c. 402 et seq., notwithstanding.

These statutes, Sections 8615 and 9287, Revised Statutes 1919, and ordinances and charter provisions, passed in pursuance thereof are laws *in pari materia,* and must be construed together, and be given a construction which violates no constitutional provision, if possible. By the weight of our Missouri cases a dedication made in conformity to Section 9287, supra, only gives to the city an easement. A valuable property right was left in the dedicator in the streets dedicated. [See the Cartright case, and other Missouri cases, supra.] The rights conferred upon city and dedicator were as at the common law. Vacation of the street, whether by non-user or by ordinance, should leave these common-law rights of the dedicator undisturbed. If, at common law, the dedicator became entitled to all of the street, released of the easement, then the statute (Sec. 8615), or a charter provision like it, which says some other party shall have half of the vacated street is one taking the private property of the dedicator and devoting it to a private use in violation of Section 20 of Article II of the Constitution. It says to A—we will give your interest in this strip of land to B, in fee simple, for him to use for his own private purposes. This cannot be done under the Constitution, and Section 8615, Revised Statutes 1919, should not be given such a construction. It should not be construed so as to make it unconstitutional, if any other construction can be given it. When it is considered that Section 9287, supra, only confers an easement upon the city, such as is conferred by a common-law dedication; and, when it is considered that at common law the whole street reverted to the dedicator, if he gave the whole street in the first instance; and, when it is further considered that the general rule at common law was that adjoining owners owned to the center of the street; and, when it is further considered that even the courts often speak of this general rule, without noting the exception, as in case one party gives all the street, we should say that the lawmakers, in the enactment of Section 8615, only intended to announce the common-law rule, including the exception. In other words, that both statutes (Secs. 8615 and 9287) are but expressive of the common law. We deem this to have been the legislative intent. Otherwise Section 8615 will have to be declared unconstitutional, and the Kansas City Charter provision likewise. In either event the judgment *nisi* would have to be affirmed, and the ruling in the Thomas-Hunt case, supra, in Division One overruled. This would leave undisturbed the ruling in Court en Banc in the

Snoddy-Bolen case, supra, even if an opinion in Division could disturb an opinion in Court en Banc. The trouble in the Thomas-Hunt case is, that we have only a futile attempt to distinguish. We think, under the construction here given to Sections 8615 and 9287, Revised Statutes 1919, the land belongs to plaintiffs.

The judgment *nisi* should be and is affirmed. All concur.